**Joyce J. BEAM, Plaintiff-Appellant,**

v.

**INTERNATIONAL ORGANIZATION OF MASTERS, MATES, AND PILOTS et al., Defendants-Appellees.**

No. 218, Docket 74–1725.

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 1974.

Decided Feb. 24, 1975.

Raymond J. Conboy, Portland, Or. (Pozzi, Wilson & Atchison, Portland, Or., of counsel, and Julien, Blitz & Schlesinger, P. C., New York City, of counsel), for plaintiff-appellant.

Albert E. Rice, New York City, for defendants-appellees.

Before MOORE, OAKES and GURFEIN, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal from a grant of summary judgment based on a finding below that the Trustees of the Masters, Mates, and Pilots Welfare Plan, a jointly-administered labor-management trust, had not acted in an arbitrary or capricious manner in denying accidental death benefits to the widow of Russell Beam where the facts as to the circumstances surrounding his death are not in issue. Plaintiff-appellant is the widow and beneficiary of Mr. Beam. Defendants-appellees include the union, the International Organization of Masters, Mates and Pilots (IOMMP), and Trustees and Officers of the plan.

On February 12, 1971, Mr. Beam was severely burned in a fire in his motel room. He was admitted to a hospital where he died 18 days later. The death certificate listed the cause of death as "acute pancreatitis" due to "acute and chronic alcoholism" and indicated that the third degree burns which covered 25% of Mr. Beam's body were "a contributing factor."

When the death certificate, appended to Mrs. Beam's application for death benefits, was received by the trust fund on March 11, 1971, the claims officer requested the attending physician to elaborate on the role of the burns in the demise of Mr. Beam. The physician, writing on April 15, 1971, explained that Mr. Beam had suffered from chronic pancreatitis for at least 10 years, that the burns caused Mr. Beam's alcoholic intake to terminate and also produced massive body stress, and that the simultaneous occurrence of these two circumstances brought on a massive attack of acute pancreatitis. In the doctor's words:

This particular combination [body stress and termination of alcoholic intake] of circumstances is a well-known etiologic factor for development of an acute massive pancreatitis which occurred in this instance. The pancreatitis was the cause of death and not a complication of the burn surface itself. However, I think that one could well say that the occurrence of the accident led to a series of circumstances resulting in death.

With the death certificate and this explanation, the Trustees consulted a physician-consultant who advised that death was caused by "acute exacerbation of chronic pancreatitis". The Trustees subsequently denied Mrs. Beam's accidental death benefit claim. After the motion

for summary judgment was filed, Mrs. Beam, through counsel, requested the physician who had attended her husband to write to the Trustees once more. This communication described the same circumstances mentioned above with the additional statement:

> This patient died of acute and chronic pancreatitis for which he was predisposed by his acute and chronic alcoholism. But for the accident resulting in burns covering 25% of his total body surface, there is no indication that this patient would have developed a massive acute pancreatitis and died at that time.

The accidental death benefit was provided for in a section of the Rules and Regulations of the Masters, Mates and Pilots Welfare Plan:

> If an Employee, . . . suffers any of the losses described in Section 7 [Schedule of Indemnities, including proviso for full amount payment for loss of life] of this Article, *as a result of bodily injuries sustained solely through external, violent and accidental means, directly and independently of all other causes* . . . the Trustee shall pay . . . the beneficiary . . . provided however, that no payment shall be made for any loss caused *wholly or partly, directly or indictectly, by*
>
> (a) *disease, or bodily or mental infirmity* or medical or surgical treatment thereof . . . (emphasis added).

Jurisdiction was asserted in the district court by plaintiff on two grounds: (1) plaintiff claims that federal jurisdiction exists pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. Section 185;[1] and (2) plaintiff also asserts jurisdiction based on diversity since plaintiff is an Oregon resident and the situs of the trust is New York.

The district court expressed some doubts as to the jurisdictional claim based on Federal labor law but found that it was unnecessary to determine this issue since diversity jurisdiction pursuant to 28 U.S.C. Section 1332 was beyond question. The lower court was of the opinion that if a federal standard by which to test the Trustees' action existed it was substantively the same as that of the State of New York. Appellant brings the jurisdictional issue before this court in this appeal arguing that she has a claim pursuant to Section 301 or alternatively pursuant to Section 302[2] and 28

---

1. Section 301 of the Labor Management Relations Act provides:

    (a) Suits for violation of contract between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

2. Section 302(c) of the Labor Management Relations Act provides exceptions to restrictions on payments to labor organizations or employee representatives:

    The provisions of this section [restricting payments by employers to union representatives] shall not be applicable . . .
    (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the adminis-

U.S.C. Section 1337[3] and, therefore, federal substantive law controls.

■ We agree with the district court that federal jurisdiction is to be exercised in this case on the basis of diversity. Appellant has failed to indicate how review would be changed if jurisdiction were to be based on federal labor laws, and we have found no case describing a federal substantive standard for review of fiduciaries' determination of an individual claim brought pursuant to a jointly-administered welfare trust fund created pursuant to Section 302(c)(5) of the Labor Management Relations Act.

Appellant argues that Section 301 confers jurisdiction on the federal courts whenever a claim involving a labor management trust is involved. Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) and subsequent lower court cases[4] where jurisdiction was based on Section 301 all involve directly the collective bargaining agreement or machinery, and we must be hesitant about reading *Smith* as supportive of the proposition that Section 301 creates federal court jurisdiction each time a decision of Trustees involving the application of rules of a jointly-administered trust to an individual claim is challenged.

While appellant did not offer Section 302 as a jurisdictional basis below,[5] on appeal she seeks support in Moglia v. Geoghegan, 403 F.2d 110 (2d Cir., 1968) where jurisdiction was predicated on the existence of a question arising under a statute of the United States, namely, Section 302 of the Labor Management Relations Act, 29 U.S.C. Section 186, making the action one of which the district court had original jurisdiction pursuant to 28 U.S.C. Section 1337. *Moglia*, unlike the case at bar, dealt with the failure of the employer and union to comply with the specific requirements of 29 U.S.C. § 186(c)(5) in creating the jointly-administered trust.[6] The court

---

tration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in the event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities.

3. The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies. 28 U.S.C. § 1337 (1948).

4. *See e. g.*, Retail Clerks, Local Union 1222 v. Alfred M. Lewis, Inc., 327 F.2d 442 (9 Cir., 1964); International Union, United Automo-

bile, Aircraft, and Agricultural Implement Workers of America v. Textron, Inc., 312 F.2d 688 (6th Cir., 1963); and Hauser v. Farwell, Ozmun, Kirk & Co., 299 F.Supp. 387 (D.Minn., 1969). *See also*, Lewis v. Benedict Coal Corp., 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960).

5. The Supreme Court has considered the role of federal jurisdiction and the role of federal substantive law under this section in a case involving criminal liability of a trustee in a jointly administered trust. *See* Arroyo v. United States, 359 U.S. 419, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959). In that case the Court held trustee's larceny by trick could not be prosecuted in federal court pursuant to the Labor Management Relations Act and that federal substantive law was limited to specific infractions of Section 302. The Court suggested that the state courts retained jurisdiction over any misconduct which fell outside the specific misconduct prohibited by Section 302 and indicated that state substantive law was controlling.

6. The question in *Moglia* was whether appellant was entitled to benefit payments from a pension trust notwithstanding the fact that the "written agreement" detailing the basis upon which payments were to be made required by § 302 had never been executed. Despite the lack of written agreement, the employer has made contributions to the local union for trust fund purposes.

there properly asserted federal jurisdiction to determine a question unique in the realm of national labor policy. The court in *Moglia* in *obiter dictum* suggested that the plaintiff there could bring a subsequent action in state court based on state law claims regarding fiduciary duties.[7]

Appellant contends that federal courts have no mandate to apply traditional trust law to Section 302 jointly administered trusts and brings up a variety of abuses argued to be unique and endemic in this labor relations field. Section 302 was originally passed as part of the Taft-Hartley Act of 1947 to curb abuses revealed during extensive Congressional investigation. *See* S.Rep.No.105, 80th Cong., 1st Sess. 52 (1947). Congress sought to remedy the situation where employers contributed to funds which were administered by union officials who were unaccountable either to the contributors or the union membership by amendment in 1959. 1959 U.S.Code Cong. & Admin.News, pp. 2326–2330.

The statute provides for the use of trust funds managed jointly by an equal number of union representatives and employer representatives. The legislation also provided for means of breaking deadlocks and required specific written agreements. Perhaps Congress should have gone further setting special standards of review for these trustees but this is not a determination to be made by this court today. Absent a legislative mandate to apply a special law on review of trustee actions in jointly administered trusts, we must apply what appellant has called the traditional trust law.

Whatever the jurisdictional route leading to review of the Trustees' action, the issues presented are: (1) did the actions of the Trustees violate Section 302(c)(5) of the Labor Management Relations Act; (2) did the actions of the Trustees exceed their authority; and (3) were the actions of the Trustees arbitrary and capricious, motivated by bad faith, or unsupported by the evidence before them when they made the decision.

The Masters, Mates and Pilots Welfare Plan consists of two documents: (1) an "Agreement and Declaration of Trust" and (2) "Rules and Regulations" which were adopted by the Trustees.[8] Thus the plan meets the requirement of 28 U.S.C. § 186(c)(5) that there be a written agreement detailing the basis for payments. The documents referred to above give the Trustees broad discretion in determining both the structure of the eligibility requirements for beneficiaries of the trust as well as the application and interpretation of the requirements in a given instance.

In reviewing the action of the Trustees using the fiduciary standard articulated in Lowenstern v. International Association of Machinists and Aerospace Workers, 156 U.S.App.D.C. 228, 479 F.2d 1211, 1213 (1973), Danti v. Lewis, 114

---

7.  403 F.2d at 116 n. 3.

8.  Example, *Article IV* of the "Agreement and Declaration of Trust" provides:

    1.  *Benefits.* The Trustees, by majority vote, shall have full authority to determine all questions of the nature, amount and duration of benefits to be paid under the Plan based on what it is estimated the Fund can provide without undue depletion or excessive accumulation.
    2.  *Coverage and Eligibility.* The Trustees, by majority vote, shall have full authority to determine all questions of coverage and eligibility to participate in and receive the benefits of the Plan and shall have the power to construe the provisions of this Agreement and the terms used herein and any such questions so determined or any construction so adopted by the majority of the Trustees shall be so binding upon all parties and persons concerned.

    The "Rules and Regulations" contain the provision relating to accidental death and disability benefits quoted on p. 1880, supra, as well as the following provision:

    In order that the Trustees may carry out their obligation to maintain within the limits of the funds available to them a sound and economic program dedicated to providing the maximum benefits for employees as a whole, the Trustees expressly reserve the right in their sole discretion and without notice to employees, employers, the union or others affected thereby, but upon a nondiscriminatory basis . . .

    (d) To interpret the provisions of these rules and regulations.

U.S.App.D.C. 105, 312 F.2d 345, 348 (1962) and Kosty v. Lewis, 115 U.S.App. D.C. 343, 319 F.2d 744, 746 (1963), or Gitelson v. DuPont, 17 N.Y.2d 46, 268 N.Y.S.2d 11, 215 N.E.2d 336 (1966), we only determine whether the Trustees' decision was arbitrary or capricious, the product of bad faith, and whether or not such decision was based on substantial evidence. Mrs. Beam submitted the death certificate. The claims officer then requested additional information from the attending physician and subsequently obtained the opinion of a medical consultant who examined the death certificate and the supplementary statement of the attending physician. While another statement of the attending physician, submitted after the motion for summary judgment was made, places more emphasis on the role of the burns in the Beam death, we agree with the court below that the Trustees' action was not arbitrary, capricious, or motivated by bad faith and that a determination that the death was not caused *solely* by accident was supported by the evidence before the Trustees.

Appellant argues that the court should review this decision in a manner similar to review of a denial of the claim of an insurance beneficiary by an insurance policy where the contract provides coverage for bodily injuries "caused directly and independently of all other causes by accidental means" excepting "accident, injury, disability, death or other loss caused wholly or partly by disease or bodily or mental infirmity or medical or surgical treatment therefor." Silverstein v. Metropolitan Life Insurance Co., 254 N.Y. 81, 171 N.E. 914 (1930). The governing principle in cases determining insurance company liability is clear:

> If there is no active disease, but merely a frail general condition, so that powers of resistance are easily overcome, or merely a tendency to disease which is started up and made operative, whereby death results, then there may be recovery even though the accident would not have caused that effect upon a healthy person in a normal state. Leland v. Order of U. C. Travelers, 233 Mass. 558, 564, 124 N.E. 517, 520 (1919).

But review in this case is not the examination of a dispute between an insurance company with a boilerplate contract on one hand and a consumer on the other. Nor are we seeking the "proximate cause" of death. Review is limited in scope here to the review traditionally accorded fiduciaries. This has been the standard used consistently in the field of the labor-management trust funds. Accordingly where no factual dispute as to the circumstances of death existed and where the applicable law of review was clear, the district court did not err in granting summary judgment in favor of the International Organization of Masters, Mates, and Pilots.

Judgment affirmed.