**Alfred J. STEWART, Plaintiff,**

v.

**TRUSTEES, MASTERS, MATES & PILOTS PENSION PLAN, et al., Defendants.**

**No. C–73–1494 WHO.**

United States District Court, N. D. California.

Feb. 4, 1977.

Graham & James, San Francisco, Cal., for plaintiff.

Gladstein, Leonard, Patsey & Anderson, San Francisco, Cal., for all defendants but Pacific Maritime.

Richard Ernst, Dennis T. Daniels, San Francisco, Cal., for Pacific Maritime.

## OPINION AND ORDER

ORRICK, District Judge.

This is an action brought under Sections 301 and 302 of the Labor Management Relations Act of 1947, as amended (29 U.S.C. §§ 185 and 186), for certain pension plan benefits the defendant, Trustees of the Masters, Mates & Pilots Pension Plan (Trustees), are allegedly denying plaintiff. Plaintiff, a Licensed Deck Officer who is covered by the Masters, Mates & Pilots Pension Plan (the Plan), alleges that the Trustees are violating the Plan's Rules and Regulations by limiting his accrued pension credits to 20 years, rather than 25 or more years allowed under certain amendments to the Rules and Regulations, thereby making him ineligible for a larger pension when he retires.

The case is before the Court on cross motions for summary judgment upon a record consisting of a stipulation of facts, a stipulation with respect to the testimony of Stephen P. Maher, the Administrator of the Plan, and documents admitted into evidence as exhibits.

For the reasons hereinafter set forth, the Court grants defendant's motion for summary judgment, and denies plaintiff's motion for summary judgment.

### I.

Plaintiff started to go to sea as a licensed deck officer in 1942. In 1955, the Trustees established the Masters, Mates and Pilots Pension Plan pursuant to 29 U.S.C. § 186. Plaintiff was covered by this Plan until he voluntarily left covered employment for personal reasons in July of 1960. In 1962, while still engaged in uncovered employment, plaintiff was severely injured. He was classified in 1963 as permanently not fit for sea duty. He therefore applied for and received a monthly disability pension for more than four years until 1968 when he was reclassified as fit for duty. The monthly benefits he received were computed on the basis of the 17½ years plaintiff had spent in covered employment prior to July of 1960 pursuant to the Article II schedule of the Regulations.

In 1968, the Trustees allowed plaintiff to return to sea and be reinstated under Article II pursuant to Section 14(a) of Article II. Contrary to the terms of Section 14(a), plaintiff was told he would be allowed to accrue up to 20 years' pension credits—the maximum allowed under Article II—pursuant to a Resolution adopted by the Trustees on August 25, 1966, designed to meet the American deck officer shortage during the Vietnam crisis. On the same date, the Article II–A schedule was added to the Regulations by the Trustees which allowed members' employees to accrue credited service up to 25 years. Article II–A became effective in 1968 before plaintiff was reinstated.

The Rules and Regulations have since been amended to allow accrual up to 30 years, and a further increase is currently under consideration. Plaintiff reached Article II's 20-year limit in 1970, Article II–A's 25-year limit in 1975, and is still sailing. The Trustees have fully heard plaintiff's claims on two occasions, and on both determined that upon retirement plaintiff's pension will be computed on the basis of Article II's 20-year limit.

## CONTENTIONS OF THE PARTIES

Plaintiff claims that the Trustees have breached the trust agreement by determining that he is not entitled to accrue credited service under Article II–A and other amendments to the Rules and Regulations promulgated after his return to service in 1968. He next claims that by excluding him from the operation of Article II–A the Trustees acted arbitrarily and capriciously in formulating and adopting the Vietnam Crisis Resolution and in deciding his individual case.

The Trustees deny plaintiff's claims and argue, first, that the controversy is not ripe for adjudication, since plaintiff has not yet re-applied for retirement benefits, and that plaintiff's claim under 29 U.S.C. § 186 that the Trustees acted arbitrarily and capriciously in adopting the Vietnam Crisis Resolution and in hearing his claims, is not properly before the Court, since plaintiff failed to raise the issue in his complaint. They next argue that plaintiff was afforded a full and fair opportunity to air his claims pursuant to the trust agreement, and as such their determination with respect to his claims is final and binding on the Court. Finally, they argue that their adoption of the Resolution and determination of plaintiff's claims were the result of their good faith efforts to serve all the members of their bargaining group, and as such should not be set aside.

## II.

## JURISDICTION

◼ The Trustees claim that the case is not ripe for adjudication because plaintiff is still working, has not reapplied for a pension, and no decision on such an application has been made. They argue that plaintiff, now age 55, may die without retiring, the Plan may be changed before he retires, or plaintiff may change his type of employment, such that the issues before the Court are hypothetical or abstract. In support, the Trustees rely on *Lugo v. Employees Retirement Fund of Illumination Products Industry,* 529 F.2d 251 (2d Cir. 1976), which held that the court should not determine a challenge by a 53-year-old union member to a rule making 60 the minimum age for application for union retirement fund benefits. The case is inapposite. Here, plaintiff accrued sufficient service time to apply for benefits under either Article II or II–A, and the Trustees have taken a firm position that he may only accrue pension benefits up to 20 years. Thus, the disagreement between plaintiff and the Trustees has "taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Public Service Commission of Utah v. Wycoff Co.,* 344 U.S. 237, 244, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952); *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

◼ The Trustees next claim that the Court is without jurisdiction over plaintiff's Section 186 claim that the Trustees acted arbitrarily and capriciously in formulating and adopting the Vietnam Crisis Resolution and in deciding plaintiff's individual case. In support, they claim that plaintiff failed to plead Section 186 jurisdiction, complained only that the contract between his employer and the labor organization has been violated, and that plaintiff did not mention Section 186 in his trial brief and proposed findings and conclusions.

However, in its August 2, 1976, brief, plaintiff cited cases construing Section 186, the parties have stipulated that the Plan is a Section 186 Trust, and evidence has been admitted relating to whether the Trustees' action with respect to plaintiff was arbitrary and capricious. Moreover, in chambers and in their proposed joint pretrial statement, the Trustees acknowledged that the issue was present in the case. In light of the liberal approach afforded under the Federal Rules of Civil Procedure notice pleading—specifically Rule 15(b) allowing amendments to the pleadings to conform to the evidence—the Trustees' objection to this Court's jurisdiction over the Section 186 claim is without merit. Furthermore, the Trustees can hardly be said to have

been surprised or prejudiced by plaintiff's reference to Section 186 by name at this stage in the proceedings.

The Court, therefore, finds that plaintiff's claims under both Sections 185 and 186 of Title 29 are ripe for adjudication and are properly before the Court.

### III.

### A. SCOPE OF REVIEW

■ Where, as here, a beneficiary under a pension trust created under Section 302 of the Labor Management Relations Act brings an action challenging an eligibility rule of the trust or an interpretation thereunder, a court should interfere with the trustees' broad discretion in settling eligibility rules only when the rule is unreasonable or its enforcement arbitrary. *Giler v. Board of Trustees of Sheet Metal Workers Pension Plan,* 509 F.2d 848 (9th Cir. 1974). The standard of review under both Sections 185 and 186 is thus limited to whether the Trustees acted arbitrarily and capriciously, in bad faith, or beyond the scope of their authority as defined by the Plan in refusing to allow plaintiff to accrue pension credits beyond 20 years. *Alvares v. Erickson,* 514 F.2d 156 (9th Cir. 1975); *Sheeder v. Eastern Express, Inc.,* 375 F.Supp. 655 (W.D.Pa.1974); *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

### B. PLAINTIFF'S SECTION 185 CLAIM

■ Under Section 185, if there has been a hearing on the merits before a grievance committee provided for under a collective bargaining agreement, the committee's dismissal on the merits is final and binding and cannot be overturned unless it is dishonest, capricious, beyond the committee's authority under the bargaining agreement, or clearly unreasonable. *Sheeder v. Eastern Express, Inc., supra; Giler v. Board of Trustees of Sheet Metal Workers Pension Plan, supra.*

Here, the Trust Agreement provides that the Trustees shall have "full authority to determine all questions of nature, amount, and duration of benefits to be paid under the Plan," to "promulgate and establish rules and regulations for the administration and operation thereof," to "formulate and establish conditions of eligibility for pensions [and] past and future service," and that "any construction and interpretation [by the Trustees] shall be binding upon all parties and persons concerned." Amendment Number 41 to Article V of the Plan provides for the grievance procedure, and Exhibits 5 through 17 demonstrate that plaintiff was aware of and followed these grievance procedures. The procedures afforded plaintiff a full and fair opportunity to present his claim, and plaintiff is not claiming that the Trustees acted with malice or ill will or in bad faith toward him.

Thus, the only questions presented with respect to plaintiff's Section 185 claim are whether the Trustees' reliance on the Vietnam Crisis Resolution violated the Plan, since the Plan does not specifically authorize them to rely on informal resolutions not published in the formal rules and regulations, and whether their ruling was so clearly unsupported by the terms of the Plan, Rules and Regulations that it was manifestly unreasonable.

■ Plaintiff argues that the Trustees improperly considered their Vietnam Crisis Resolution in deciding his case, since the Resolution was only contained in the Trustees' minutes and was never published in the formal Rules and Regulations or included in the sequentially numbered amendments to the Rules and Regulations. Plaintiff has cited no authority in support of this novel proposition, and I find it unpersuasive. To say that the Trustees must ignore the policies they set in meetings and consistently adhere to ignores the nature of collective bargaining and the administration of pension plans. As noted by Walter W. Kolodrubetz in *Multi-Employer Pension Plans Under Collective Bargaining*—Part III, Bureau of Labor Statistics, Monthly Labor Review, April 1962, at page 390:

"Multi-employer plans make room for flexibility. In a sense, the joint boards engage in continuous collective bargain-

ing on what the pension plan can and will do. The judgment of the joint boards can be exercised in virtually all matters except the rate of employer contribution. Thus, they generally have the authority to modify eligibility requirements and the benefit structure, even for workers who have already retired."

Moreover, the Trustees did publish this Resolution in their Minutes and in notices sent to plaintiff and all other Article II pensioners. Plaintiff was fully aware of this provision, and indeed returned to work under it. His argument must therefore fail, for it does not "take into account that collective bargaining agreements often include terms besides those which appear in the written contract. * * * Necessarily, a written policy which both sides accept * * * is also capable of becoming part of the agreement." *Sanderson v. Ford Motor Co.,* 483 F.2d 102, 111–112 (5th Cir. 1973).

■ Nor can it be said that the Trustees' ruling was so clearly unsupported by the terms of the Plan, Rules and Regulations and Vietnam Crisis Resolution that it was manifestly unreasonable. Plaintiff's contention is that Article II–A is applicable to him, since it applies to those who retire after June 16, 1968, and when he again retires it will be after that date. He therefore concludes that the Trustees' decision that he is covered by Article II and not by Article II–A is clearly unreasonable and thus a violation of the Plan.

The argument is without merit. It overlooks the fact that plaintiff initially retired under Article II before June 16, 1968, and in fact received disability payments under that schedule for more than four years prior to returning to service. The reasonable interpretation of Article II–A is that it applies to covered employees retiring for the *first* time on or after June 16, 1968. Indeed, the Rules and Regulations and amendments promulgated from time to time by the Trustees have consistently stated that once a covered employee retires under a particular schedule, that schedule is applicable to him should he thereafter re-

turn to service. Plaintiff has failed to call to the Court's attention a single instance where this general interpretation has not been followed by the Trustees.

■ Plaintiff nevertheless argues that Article II is not applicable to him, since Section 14(a) thereof was not intended to cover those who retired under disability, as he did, and since Section 14(a) provides that returning pensioners are not allowed to accrue service time "to any higher benefit amount than that originally established," but he was allowed to accrue an additional 2½ years' credited service time when he returned to sea. He therefore reasons that he must be allowed to come under the Article II–A schedule, or any further amendment of the schedule while he is still in service, as the only provisions reasonably applicable to him. In support, he relies on general contract principles set forth in *Riess v. Murchison,* 329 F.2d 635 (9th Cir. 1964), *Prince v. Packer Manufacturing Co.,* 419 F.2d 34 (7th Cir. 1969), and the First Restatement of Contracts, Section 235(E), for the proposition that the Trustees' subsequent amendment of Section 14(a) excluding disability pensioners and allowing him to return and accrue credits up to twenty years manifest their interpretation of the Plan that plaintiff is not covered by Article II. These authorities are inapposite. They involve contracts and circumstances fundamentally different from what is involved in the instant case—the Trustees' interpretation of the pension provisions of a collective bargaining agreement. The applicable law is the federal law with respect to collective bargaining contracts and pension plans. *Alvares v. Erickson,* 514 F.2d 156 (9th Cir. 1975).

More importantly, at the time of the Trustees' decision, neither the Vietnam Crisis Resolution nor Section 14(a) made a distinction between disability and other pensioners. It is clear that the Resolution was the only reason plaintiff and other returning Article II pensioners were allowed to accrue pension credits in excess of the limits set forth in the original provision

of Section 14(a). As such, the Trustees' ruling that plaintiff and all other Article II pensioners returning to service during the Vietnam situation were to be reinstated under Article II as modified by the Resolution was not manifestly unreasonable.

 The Court, therefore, finds that the Trustees have not breached the Trust Agreement by determining that plaintiff is not entitled to accrue credited service under Article II–A or other amendments to the Rules and Regulations promulgated after his return to service in 1968.

## C. PLAINTIFF'S SECTION 186 CLAIM

Plaintiff's contentions under 29 U.S.C. § 186 raise claims of arbitrariness and caprice in the performance of two types of Trustee action: One is the adoption of regulations, general rules and general interpretations; and the other is in deciding individual cases.[1] Plaintiff claims that even if the Plan has not been violated, the Trustees acted arbitrarily and capriciously in promulgating the Vietnam Crisis Resolution and in determining his individual case.

 Under Section 186, the Trustees' decision should only be set aside if they did not "make an honest effort to serve the interests of all * * * members without hostility to any," to serve what they "believe will best serve the interests of the parties represented," in "complete good faith and honesty of purpose in the exercise of [their] discretion." *Ford Motor Co. v. Huffman, supra,* 345 U.S. at 337–38, 73 S.Ct. at 686. Plaintiff nevertheless argues, first, that since the returning disability pensioners were so few in number (5), and since allowing increased benefits to them would have had an insignificant impact on the Plan's financing and projections, the Trustees acted arbitrarily in not distinguishing between disability and other pensioners. The argument is without merit.

First, at the time the Resolution was promulgated, the Trustees were unaware how many of the 1,123 affected pensioners, 119 of whom were disability pensioners, and what type of pensioner would return to service. Moreover, while disability pensioners receive special treatment under the Plan in that less time of accrued service is required to become eligible for a disability pension, from the time of the Plan's adoption in 1955 until the Vietnam Crisis Resolution, the Plan had consistently treated disability and other returning pensioners the same. Such equal treatment is entirely appropriate under Section 186. For example, in *Johnson v. Botica,* 537 F.2d 930 (7th Cir. 1976), the Seventh Circuit refused to afford a disability pensioner special treatment with respect to an eligibility requirement, noting that:

> " * * * the essential focus of legal analysis is not the economic problems of individual [employees] but rather whether the plaintiff met the standards of eligibility after the Pension Trust Fund was established and whether said standards were fair and reasonable." 537 F.2d at 936.

Second, it is undisputed that the Trustees' decision to limit all returning pensioners to 20 years' accrued service time was based on independent actuarial studies, professional pension consultant services, and a general policy of encouraging pensioners to return to service during the Vietnam situation and resulting shortage of licensed deck officers. Such considerations preclude a finding that the Trustees' adoption of the Vietnam Crisis Resolution was arbitrary. As the Supreme Court noted in *Ford Motor Co. v. Huffman, supra,* 345 U.S. at 337–38, 73 S.Ct. at 686:

> " * * * Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid.

---

1. While there is a split of authority with respect to whether there is Section 186 jurisdiction over the latter type of Trustee action (*see, Alvares v. Erickson,* 514 F.2d 156, 165 (9th Cir.

1975), I need not decide the issue here. The Trustees have not acted arbitrarily and capriciously in the performance of any of their functions.

The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents * * *.

Compromises on a temporary basis, with a view to long range advantages, are natural incidents of negotiation. Differences in wages, hours, and conditions of employment reflect countless variables."

It was entirely reasonable, then, and hardly arbitrary that the accrual time of all returning pensioners was limited to the maximum allowed under the schedule under which they had retired and collected benefits. The Trustees did not act arbitrarily in refusing to distinguish and afford special treatment to disability pensioners in their adoption and application of the Vietnam Crisis Resolution.

With respect to the Trustees' action in deciding his individual case, plaintiff argues that the Trustees' ruling was arbitrary and manifestly unreasonable in that (1) it did not relate to his contributory service, (2) it did not take into account that plaintiff's original retirement was involuntary, and, (3) the enforcement of the Vietnam Crisis Resolution, even if reasonable at the time of its promulgation, is now unreasonable.

Relying on *Roark v. Boyle,* 141 U.S.App. D.C. 390, 439 F.2d 497 (1970), plaintiff argues, first, that because of his 8 years' employment during the time Article II–A has been operative, with larger employer contributions, the Trustees' refusal to allow him to take advantage of the Article II–A benefit structure renders their ruling arbitrary and unreasonable. *Roark* (in addition to *Patterson v. United Mine Workers,* 346 F.Supp. 11 (E.D.Tenn.1971) and *Collins v. United Mine Workers,* 298 F.Supp. 964 (D.C. Cir.1969), cited in plaintiff's brief) involved a challenge to a rule under which a pensioner's last regular employment before retirement was required to be with an employer who had signed the pension agreement. The effect was that an individual who had

19 years' accrued service, but had spent the last 12 months with a non-contributing employer, forfeited his entire benefits under the plan. Obviously, no such forfeiture is involved here. Plaintiff nevertheless argues that this forfeiture distinction is not crucial, and that *Roark* merely stands for the proposition that receipt of benefits must have some reasonable relation to the amount of accrued service time. The Court finds this argument unpersuasive. The linchpin of the *Roark* decision was the complete forfeiture of all benefits after the employee had once met the eligibility requirements. . Plaintiff is clearly not in the same position, since he will receive benefits when he again retires.

■ Moreover, the argument suggests that the Plan is arbitrary because it does not allow one to accrue benefits based on actual service time. However, it is common, especially in the water transportation industry, to have a uniform formula such as the one in issue here, and such plans are not arbitrary. *Multi-Employer Pension Plans Under Collective Bargaining,* Department of Labor, Lab. Bulletin No. 1362 p. 69 (1960); *Johnson v. Botica, supra,* 537 F.2d at 935, 936.

Plaintiff further argues that the Trustees' ruling was unreasonable in that it did not take into account the fact that he was involuntarily retired under Article II, since he was classified as permanently unfit for sea duty. In support he relies on *Lee v. Nesbitt,* 453 F.2d 1309 (9th Cir. 1972), and *Giler v. Board of Trustees of Sheet Metal Workers Pension Plan, supra,* both of which involved a "break-in-service" eligibility rule. Under the rule, a break in covered employment for a specified period resulted in complete loss of all credits prior to the break. *Giler* impliedly made the distinction between involuntary and voluntary breaks in employment by holding that the forfeiture of all benefits after a voluntary break did not render the Plan arbitrary. *Lee v. Nesbitt* was more explicit. In that case, plaintiff had earned 15 years of credit, entitling him to pension benefits, and then suf-

fered a lengthy break in employment during a recession in the industry—that is, he suffered the break involuntarily. After the recession he returned to work, but upon retirement was denied benefits because without the pre-break credits he was not eligible to receive pension benefits. Plaintiff here reasons from the *Lee v. Nesbitt* decision that this Court should therefore determine that the Plan is arbitrary because it does not distinguish pensioners who voluntarily retired from those who involuntarily retired due to their being classified permanently unfit for sea duty. However, plaintiff initially retired voluntarily, and it was only after he had been injured while engaged in uncovered employment that he was classified permanently unfit for duty and applied for a disability pension.

More importantly, the Ninth Circuit did not predicate its opinion in *Lee v. Nesbitt* on the fact that plaintiff there was involuntarily precluded from continued employment. In fact, the Court specifically rejected the argument that failure to make the voluntary-involuntary distinction was, without more, arbitrary. Thus, it noted (453 F.2d at 1311):

"* * * [Lee] contends that the rule is unreasonable on its face because it also operates whenever a break is involuntary. This contention is too far reaching * * * denial of benefits can reasonably be rested upon an insufficiency of years of employment regardless of the reason."

Finally, plaintiff argues that even if the initial decision of the Trustees was not arbitrary and capricious, it certainly is now, since the Vietnam crisis has long since passed, and since there are only 5 possible individuals in his position and they could not possibly have any impact on the operation of the Plan. In support, he cites *Roark v. Boyle, supra,* which considered the historical explanation for the requirement that the last employment be with a contributing employer and found it no longer justified the forfeiture of all benefits.

Relying on *Beam v. International Organization of Masters, Mates & Pilots,* 511 F.2d 975, 979 (9th Cir. 1975), the Trustees resist this argument and argue that the standard is whether the actions of the Trustees were "arbitrary and capricious, motivated by bad faith, or unsupported by the evidence before them *when they made the decision.*" 511 F.2d 979 (Emphasis added.). *Beam,* however, is distinguishable as it involved the denial of a death benefit claim much more closely related in time to the Trustees' action, and a disputed material fact. Nevertheless, in light of the fact that the initial decision with respect to returning pensioners and plaintiff's understanding that he would only be allowed to accrue up to 20 years if he returned, the Trustees' adherence to a consistent policy with respect to a special class of covered employees is not an arbitrary, capricious or manifestly unreasonable decision. All returning pensioners have received the same treatment as plaintiff, and the Trustees have acted at all times in the best interests of the collective bargaining unit as a whole.

The Court, therefore, finds that the Trustees did not act arbitrarily or capriciously in promulgating the Plan, Rules and Regulations, or the Vietnam Crisis Resolution. Nor did they act arbitrarily or capriciously in hearing and determining plaintiff's individual claim, and in applying their own rules and procedures. As such, the Trustees' determinations should not be set aside.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment is granted and that plaintiff's motion for summary judgment is denied.