John Frederick CAWLEY, Plaintiff,

v.

**NMU PENSION AND WELFARE PLAN, Defendant.**

**No. 75 CIV 4312.**

United States District Court,
S. D. New York.

Sept. 5, 1978.

Linda A. Strumpf, Zwerling & Zwerling, New York City, for plaintiff.

Minna J. Kotkin, Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendant.

## OPINION

SAND, District Judge.

Plaintiff, a disabled seaman, seeks a declaratory judgment that he was wrongfully denied a pension by defendant NMU Pension and Welfare Plan ("Plan"). Plaintiff seeks monetary relief for the amount due together with attorneys' fees, interest and costs. Defendant, on the other hand, argues that the Trustees acted within their authority, and pursuant to valid regulations, in denying plaintiff's application for pension benefits. Both sides have moved for summary judgment. For the reasons set out below, defendant's cross-motion for summary judgment is granted.

## FACTS

Plaintiff, John Cawley, was a member of the National Maritime Union ("NMU") from 1937 until 1957. In 1957, he joined the United Fruit Company as a licensed officer and continued to serve as a licensed officer until April, 1971. While serving as a licensed officer, he was a member of the Brotherhood of Marine Officers ("BMO"). From April, 1971 to April, 1972, plaintiff collected severance pay from United Fruit and then retired with a pension from that company. After leaving United Fruit, plaintiff never returned to active employment, having become disabled in July, 1971.[1] He applied for a NMU pension in July, 1974 when he reached retirement age of sixty-five.

The Trustees of the Plan denied his application on the ground that his failure to work in covered employment since 1957 caused him to incur a break in service which cancelled his prior pension credits.[2] Under the Plan regulations, this break in service could have been avoided if plaintiff returned to work in covered employment for four quarters. Plaintiff never worked these four quarters, allegedly because of a disability.

After having been denied a pension, plaintiff filed this action for declaratory relief. Federal jurisdiction is predicated on section 502(f) of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. section 1132(f). At plaintiff's request, the Trustees reconsidered his application after this action was filed; however, they again found him ineligible. Besides reiterating the four-quarter requirement, the Trustees found that plaintiff was ineligible under another regulation which required ten years of post-1951 contributory service before an employee would be credited with his pre-1951 service.[3]

## PLAN

The Plan under which plaintiff applied for benefits was created in 1950 by an agreement between NMU and the employers of unlicensed seamen represented by the NMU. The Plan was financed solely by employer contributions; however, no contri-

1. Initially, both plaintiff and defendant stated that plaintiff became disabled in May, 1973. Later, in the answering papers to defendant's motion for summary judgment, plaintiff's counsel stated that the disability arose in July, 1971. For the purposes of defendant's motion for summary judgment only, and to avoid factual dispute, defendant agreed not to contest the earlier disability date.

2. Plaintiff was not eligible on the basis of his age for a pension when he left NMU in 1957. Because plaintiff did not return to NMU, he suffered a break in employment. Under the terms of the Plan, this break in employment cancelled his prior pension credit. The "break in employment" regulation provides:

"*General Rule*—Beginning with 1951, if a person does not work in covered employment for the 'required minimum' days * * in any period of three consecutive calendar years, he shall be deemed to have a break in employment and his previous pension credits ·shall be cancelled." Reg. Art. III, Sec. 4(b).

3. Plaintiff last worked in covered, *i. e.*, NMU, employment in August, 1957. At that time, he had six and a quarter years of post-1951 contributory service. Because he never met the ten-year requirement, his fourteen years of non-contributory, pre-1951 service were not credited to him.

butions were required for pre-1951 service. At the time of its inception, a seaman's eligibility for an NMU pension depended on three major factors: (1) having reached the age of sixty-five; (2) having twenty years of pension credit; and (3) not having incurred a break in service which meant that, to avoid cancellation of prior pension credits, a seaman had to work at least two hundred days in every three year period.

Under these eligibility requirements, plaintiff did not qualify for a pension when he left NMU in 1957. After 1959, however, these eligibility requirements were altered in several ways that potentially could have made plaintiff eligible for an NMU pension. In 1964, the Trustees amended the Plan to provide a "grace period" to the break in service rule if a seaman served as a licensed officer for four quarters.[4] Besides this "four quarter rule", the Trustees adopted a "ten year rule" in 1968, which limited a seaman's entitlement to service credit for periods of employment prior to the funding of the Plan in 1951. Before the amendment, pension credits were awarded for the years 1937 through 1950 on the basis of either employment as a seaman on oceangoing vessels of the American Merchant Marine or membership in the NMU. The ten year rule provided that awards for pre-1951 service could be made only if an employee earned at least ten years' service credit after January 1, 1951.[5]

**STANDARD OF REVIEW**

Plaintiff argues that the Trustees improperly denied his claim on the grounds that he failed to work the requisite four quarters after he left licensed employment and that he failed to meet the requirements of the ten year rule. According to plaintiff, the Trustees breached their fiduciary obligations in adopting these regulations. Specifically, plaintiff argues that the Board of Trustees failed "to administer the trust and manage the funds and assets of the trust for the exclusive benefit of its participants and their beneficiaries". Plaintiff's Brief, p. 8.

■ Before examining the merits of plaintiff's claims, we note that under the terms of the Plan the Trustees had the authority to promulgate and establish rules and regulations for the administration and operation of the pension program.[6] Thus, this Court's review of the Trustee's actions is necessarily limited to whether the eligibility requirements, or the application of these requirements to the particular facts, are arbitrary or capricious. See, e. g., *Riley v. MEBA Pension Trust,* 570 F.2d 406, 412–13 (2d Cir. 1977); *Rehmar v. Smith,* 555 F.2d 1362, 1371–72 (9th Cir. 1977); *Johnson v. Botica,* 537 F.2d 930, 935 (7th Cir. 1976); *Beam v. International Organization of Masters, Mates & Pilots,* 511 F.2d 975, 979–80 (2d Cir. 1975).[7]

**4.** This amendment, with certain minor language changes, became Art. III, Section 4(f) of the Regulations, which provides:

"Grace Period on Account of Licensed Service—An Employee shall be allowed a grace period during any period he is engaged as a licensed officer by a company which is a party to the Agreement and Declaration of Trust while he is represented by an affiliate of the Union; provided, however, the Employee earns Pension Credit for at least four quarters by working at sea in Covered Employment after the termination of such licensed service."

**5.** NMU Pension Regulations, Art. II, Sec. 2(c).

**6.** Article III, Section 1(d) of the NMU Pension Trust Declaration authorized the Trustees to:

"Formulate and adopt a pension program for the exclusive benefit of Employees and promulgate and establish rules and regula-

tions for the administration and operation thereof; and in pursuance thereto (but without intent to limit such authority) formulate and establish conditions of eligibility with respect to age and length of service, qualifications for early or disability retirement, post and future service credits, the method of providing pensions . . . and all other matters which the Trustees in their discretion may deem necessary or proper to effectuate the purposes and intent of the pension program."

Article VI, Section 1 of the Pension Trust Declaration permits the Trustees to "amend or modify this Trust and the Regulations established hereunder at any time . . . .".

**7.** Although most of these cases were decided under Section 301 of the Labor Management Act rather than ERISA, the Second Circuit has recognized that the same arbitrary and capricious standard applies to both types of cases.

Under this standard, we need not determine whether the Trustees drafted the best possible eligibility requirements. It is sufficient that the Trustees' requirements have a rational justification. *Riley v. MEBA Pension Trust, supra; see also Roark v. Boyle*, 141 U.S.App.D.C. 390, 392, 439 F.2d 497, 499 (1970) (in applying the arbitrary and capricious standard of review, courts should be careful "to avoid second guessing the discretionary judgments of the Trustees . . . .").

### FOUR QUARTER REQUIREMENT

Plaintiff challenges the denial of his pension on the basis of his failure to meet the four quarter requirement on several grounds. Initially, plaintiff argues that on its face the regulation is arbitrary and capricious. Further, plaintiff urges that even if the regulation is facially valid, it should not be applied to him because his intervening disability made it impossible for him to work the requisite quarters. Finally, plaintiff argues that because other seamen who did not comply with the regulation were granted pensions, he is also entitled to a waiver of this requirement.

■ Having examined the detailed affidavit of Albert Franco, Administrator of the NMU Plan, and the exhibits attached thereto, we conclude that the Trustees did not act arbitrarily or capriciously in requiring four quarters of employment to cure a service break.[8] According to Franco, the regulation was adopted to encourage NMU members, such as plaintiff, to better themselves by qualifying as licensed officers, without jeopardizing their accumulated NMU pension credit. However, in keeping with the Plan requirement that "benefits [be provided] to employees who remain in Covered Employment more or less continuously over a period of years and up to the time when they retire on a pension,"[9] the Trustees determined that a seaman must return to NMU employment for four quarters to ensure that the seaman renewed his connection with the NMU before collecting its pension benefits. Besides constituting a demonstration of "loyalty", the four quarter requirement was also necessary for the financial integrity of the Plan, *i. e.*, employer contributions for these quarters help defray the cost of the pension.

■ Even assuming, however, that the rule is valid, plaintiff argues that it should not be applied to him because his disability made it impossible for him to satisfy the requirement. This disability is not disputed by defendant; however, defendant argues that disability does not permit the Trustees to waive the four quarter requirement. According to defendant, there are no exceptions to the four quarter requirement. To grant exception would be contrary to the purposes of the regulation. The reason for this ironclad rule is spelled out in the affidavit of Albert Franco:

"The reason that there is no exception is obvious. If there was a disability exception, an employee could retire from licensed service, not return to covered employment, and then, if he became disabled many years later, could claim eligibility for an NMU pension. The allowance of a pension under these circum-

---

*Riley v. MEBA Pension Trust*, 570 F.2d 406, 413 (2d Cir. 1977).

**8.** We do not understand plaintiff to attack the underlying break in service rule. A break in service rule is not, standing alone, arbitrary and capricious. As Chief Judge Mischler noted in respect to the NMU break rule:

"The apparent purpose of the break rule as originally devised was to encourage fidelity to the maritime industry by awarding past pension credit to those seamen who spent substantial time in the industry after the pension fund was established. Only those seamen who demonstrated a consistent commit-

ment to the maritime trade were entitled to be credited for pension purposes with time served prior to the establishment of the plan, when their work did not generate employer contributions to the fund." *Mosley v. National Maritime Union Pension & Welfare Plan*, 438 F.Supp. 413 at 422, n. 8 (E.D.N.Y. 1977). *See also Wilson v. Board of Trustees*, 564 F.2d 1299 (9th Cir. 1977); *Giles v. Board of Trustees of Sheet Metal Workers Pension Plan*, 509 F.2d 848 (9th Cir. 1975).

**9.** NMU Pension Regulations, Article III, Section 4(a).

stances would be contrary to the clear intent of the regulation . . .. To take another example, a seaman who became disabled while still in licensed service would also be eligible for the grace period. But if he did not become disabled and did not meet the four quarter requirement, he would not receive a pension. Again, the purpose of the regulation would be defeated."

■ Although plaintiff cites no plan regulation or amendment which permits a disability exception, plaintiff argues that because plaintiff was unable to work for reasons beyond his control, the Trustees had to grant him an exception. In support of this principle, plaintiff relies solely on two cases: *Teston v. Carey*, 150 U.S.App.D.C. 256, 464 F.2d 765 (1972) and *Lee v. Nesbitt*, 453 F.2d 1309 (9th Cir. 1972). These cases, however, can easily be distinguished. In both cases, the plaintiffs suffered an "involuntary" break in service due to the unavailability of employment in the industry after satisfying the Plan's service, but not its age, requirements. The courts found that such an "involuntary" break should not operate to cancel accumulated service credit.

This is not the case here. Plaintiff's withdrawal from NMU covered employment in 1957 was voluntary. Although plaintiff does not dispute this, he argues that voluntariness should not be judged at the time of leaving the industry but rather at the time of anticipated return. Yet, both cases cited by plaintiff concern employees who were forced to *leave* the industry because of lack of work. Moreover, in *Stewart v. Trustees, Masters, Mates & Pilots Pension Plan*, 432 F.Supp. 742, 750–51

(N.D.Cal.1977), the court, faced with a similar factual situation, ruled that Trustees are not obligated to waive adverse pension requirements when a voluntary decision becomes involuntary as a result of an intervening disability. Because we find, as did the *Stewart* court, that plaintiff left voluntarily, we conclude that the Trustees were entitled to condition reinstatement of plaintiff's pension credit upon the four quarter requirement and to strictly enforce that condition.

Finally, plaintiff argues that the Trustees applied the four quarter requirement in a discriminatory or malicious manner. In support of the argument, plaintiff relies on the Trustees' grant of pension benefits to four other licensed officers. However, on the basis of plaintiff's own exhibits,[10] the four quarter requirement was not relevant to these seamen's pension applications. All four retired under the service pension regulation adopted in 1964.[11] Unlike Plaintiff, they were eligible for a pension because none of these seamen had incurred a break in service by 1964. Thus, this Court finds that the Trustees did not act arbitrarily or capriciously in hearing and determining plaintiff's individual claim and in applying their own rules and regulations.

### TEN YEAR RULE

Besides the four quarter requirement, the Trustees also determined that plaintiff was not entitled to a pension because he did not have ten years of post-1951 service. Plaintiff does not argue that the ten year rule is arbitrary or capricious or that plaintiff fulfilled its requirement.[12] Rather, plaintiff

---

10. Exhibit H to Affidavit of Linda Strumpf submitted in support of plaintiff's motion for summary judgment.

11. This regulation provides:

"(a) An Employee shall be entitled to retire on a Service Pension if—on or after June 1, 1964—he has credit for at least 20 years of service. A person who had 20 or more years of service credit, but who, prior to June 1, 1964 lost such credit because of a break in employment, as defined in Article III, Section 5, shall not be entitled to a Service Pension."

12. If plaintiff had made this claim, *Mosley v. NMU Pension & Welfare Plan*, 451 F.Supp. 226 (E.D.N.Y.1978) (grant of defendant's motion for summary judgment) would have presented a formidable barrier. In *Mosley*, Chief Judge Mischler found that, in light of the economic data supplied to the Court by the Plan Trustees, the NMU ten year rule was not arbitrary or capricious. Specifically, Judge Mischler held:

"The 1968 amendments were precipitated by economic changes. The trustees acted within their power and consistent with the intended purposes of the Plan—'to provide

argues that the plan is estopped from asserting the ten year rule as a basis for plaintiff's pension denial for two reasons. First, plaintiff argues that because the Trustees did not cite the ten year rule in their first denial letter, dated November 12, 1974, they are estopped from relying on that ground in their second denial letter, dated November 6, 1975. Second, plaintiff claims that the Trustees cannot rely on the ten year rule because he was never notified of the adoption of the ten year rule.

■ We find that the Trustees' failure to cite the ten year rule as an alternate basis for denying plaintiff's application in their first letter does not preclude the Trustees from asserting the rule as a valid basis for the denial of his pension. Indeed, even if the Trustees had failed to mention the ten year rule, it would nevertheless be enforced by the Court. For example, in *Hicks v. Pacific Maritime Association*, 567 F.2d 355 (9th Cir. 1978), the Trustees had relied upon one plan provision for their suspension of plaintiff's pension. The district court, however, after determining that the provision relied upon did not apply to plaintiff, ruled that an alternative regulation justified the suspension of benefits. On appeal, the issue presented was: "[S]hould the action of the trustees be set aside because the trustees gave a wrong reason for the denial of benefits." The court upheld the finding below, and refused to overturn the Trustees' decision.

Plaintiff argues, however, that even if we find that the Trustees' failure to cite the rule in their initial denial letter does not

estop them from relying on the rule, the rule should not apply to him because he was never notified of the ten year requirement. Specifically, plaintiff points to three letters written by the Trustees after the passage of the ten year requirement, which reviewed plaintiff's eligibility.[13] While all three letters state that in order to be credited with his twenty years of NMU service, plaintiff must return to sea for four quarters, the letters make no mention of the ten year requirement.

Furthermore, plaintiff argues that had plaintiff been notified of the requirement, he may have tried to satisfy the rule in 1968.[14] Under plaintiff's theory, the absence of notice to plaintiff of the existence of the rule excuses plaintiff from fulfilling the requirements of the rule. In support of this principle, plaintiff cites *Burroughs v. Board of Trustees of Pension Trust Fund*, 542 F.2d 1128, 1131 (9th Cir. 1976). There, the Ninth Circuit found it "fundamentally unfair for the Trustees to apply the break-in-employment rule to employees such as Burroughs who had no notice of its existence and have no reasonable opportunity to protect themselves from its impact during the years to which it was retroactively applied."

■ We are unable to determine from the present state of the record whether plaintiff received any notification of the adoption of the ten year rule or whether in fact he relied on any representations made by the Trustees concerning his pension eligibility. If we had to rely solely on the ten year rule to substantiate defendant's denial

benefits to employees who remain in Covered Employment more or less continuously over a period of years and up to the time when they retire on a pension;' NMU Pension Regulation, Art. III, Sec. 5. The amendment implementing the 10 year rule eliminating the Early Retirement Pension restored financial soundness to the Plan by eliminating covered seamen who were not employed full time since 1951."

13. Exhibit E to Affidavit of Linda Strumpf submitted in support of plaintiff's motion for summary judgment. Besides these three letters, plaintiff's counsel states in her brief that plaintiff was never notified of the ten year rule. This statement, however, appears only in plain-

tiff's brief. This motion was submitted solely on the affidavit of the attorney. According to plaintiff's counsel, plaintiff lacks the requisite mental capacity to execute an affidavit.

14. Satisfying the rule, however, might have proved difficult. The ten year requirement was adopted in 1968, effective January 1, 1969. Even if plaintiff had attempted to accumulate the requisite years of service credit, his disability would have prevented him from accumulating ten years. In 1968, plaintiff needed 3¾ years of credit. At the most, plaintiff could have accumulated three years before the onset of his disability in April, 1971.

of plaintiff's pension, we would hesitate to grant summary judgment without an evidentiary hearing. Were such a hearing to be held, however, plaintiff's burden would be overwhelming. On the basis of plaintiff's own statement, plaintiff never attempted prior to his disability to satisfy the lesser of the two requirements which now renders him ineligible for a pension. He must, therefore, argue that he had no actual knowledge of the ten year rule and that, had he known about the rule, he would have attempted to satisfy it by returning to covered employment for three and three-quarter years. This requires the further contention that the reason why he made no attempt to satisfy the four quarter rule was his belief that he could satisfy that requirement at a later, more convenient time.[15]

We need not now, however, determine this question of reliance. Because we find that the Trustees validly denied plaintiff's application on the basis of his failure to work the requisite four quarters, we decline to reach the issue of the validity of the denial on the basis of the ten year rule. In denying plaintiff's claim, we note that this is not a case in which an employee, having become eligible for a pension, is deprived of that pension by a subsequent modification of rules. Under the terms of the Plan, there was never a time at which plaintiff was qualified for an NMU pension.

Accordingly, defendant's cross motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

SO ORDERED.

---

15. The burden of proof of reliance rests, of course, with plaintiff. Counsel for plaintiff offers no explanation of how, if plaintiff's present mental condition does not permit him to execute an affidavit (see par. 13 supra), plaintiff would now prove that he engaged in this complex logic when he learned of the four quarter rule but was allegedly unaware of the ten year rule. Plaintiff was deposed in this proceeding three years ago and was intermittently lucid. He was not asked and did not volunteer any testimony concerning reliance.