William J. **RILEY**, Plaintiff-Appellant,

v.

**MEBA PENSION TRUST,**
Defendant-Appellee.

No. 247, Docket 77–7320.

United States Court of Appeals,
Second Circuit.

Argued Oct. 27, 1977.
Decided Dec. 15, 1977.

Arthur B. Sheehan, New York City (Sheehan & Courtney, New York City, of counsel), for plaintiff-appellant.

Bettina B. Plevan, New York City (Proskauer, Rose, Goetz & Mendelsohn, and John R. Holsinger, New York City, of counsel), for defendant-appellee.

Before FRIENDLY, GURFEIN and MESKILL, Circuit Judges.

FRIENDLY, Circuit Judge:

Plaintiff, William J. Riley, retired from employment as a port engineer for United States Lines, Inc., on May 1, 1975. If nothing else had happened, he would concededly have been entitled to receive from defendant MEBA Pension Trust a pension benefit of $949.68 per month. Prior to his retirement Riley had written the trustees of the MEBA plan that he was being considered for a civil service position in the United States Department of Commerce, Maritime Administration, Office of Ship Construction, as an Assistant Construction Representative;[1] he sought a waiver from a provision in Article II A, § 13 of the Plan's Regulation quoted in the margin.[2] The trustees declined to issue the waiver and, when Riley obtained the government post, refused to pay his pension so long as he remained so employed.

Riley thereupon brought an action in the District Court for the Southern District of New York for a declaratory judgment that he was entitled to receive his pension benefits. Federal jurisdiction was predicated on § 502(f) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(f). The complaint alleged that the trustees' interpretation of Article II A, § 13 to include a Federal civil service job as "future service in the American Flag or Foreign Flag Maritime Industry" was erroneous and that the plan was discriminatory in providing for a suspension of benefits for marine engineers whose pensions had been earned in part by land based employment and who had then obtained another job in the maritime industry, whereas marine engineers who retired after a life spent entirely at sea were prohibited only from taking further employment as seamen. Both plaintiff and defendant moved for summary judgment. In his memorandum in support of the summary judgment motion, plaintiff added yet another claim, arguing that denial of his pension during his government service violated § 203(a)(3)(B)(ii) of ERISA, 29 U.S.C. § 1053(a)(3)(B)(ii), which provides:

(B) A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that the payment of benefits is suspended for such period as the employee is employed, subsequent to the commencement of payment of such benefits—

\* \* \* \* \* \*

(ii) in the case of a multiemployer plan, in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits commenced.

The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subparagraph, including regulations with respect to the meaning of the term "employed".

■ In a memorandum and order, Judge MacMahon granted defendant's motion and denied plaintiff's. The judge thought that the ERISA provision was of no avail to Riley since it "establishes the conditions under which the right to an accrued benefit shall not be treated as *forfeitable* and does not specify under what circumstances a benefit may properly be *suspended*."

In so holding the court fell victim to the not uncommon error of reading technical

---

1. The job description of the position reads in part as follows:

This position is located at a shipyard where a Field Construction Office is maintained by the Division of Production. The incumbent serves as Construction Representative and is concerned with administering and supervising matters involving on-the-site construction, betterment and/or conversion of ships under contract(s) to which the Maritime Administration and/or Maritime Subsidy Board is (are) a party. These include direction of subordinates in plan review, solution of con-

struction and engineering problems and other responsibilities of a Field Construction office. The work may encompass one specific type of ship (i. e., tanker or cargo) as per a given contract or a wide variety of ships in instances where multiple contracts may be in effect.

2. When an Employee qualifies for and receives a pension based in part on credits derived from employment as a Port Engineer, Port Electrician or Hull Inspector, retirement shall preclude any future service in the American Flag or Foreign Flag Maritime Industry.

pension language as if it were ordinary English speech. Cf. *Gediman v. Anheuser Busch, Inc.*, 299 F.2d 537, 544–45 (2 Cir. 1962). Section 203(a)(3)(B)(ii) must be read in context. Section 203, 29 U.S.C. § 1053, entitled "Minimum Vesting Standards," begins by requiring each pension plan to "provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age . . ." and goes on to provide that the employee's rights in an accrued benefit derived from his own contributions must be nonforfeitable and that as regards employer contributions, the employee's rights must be nonforfeitable if he has met certain requirements relating to age and years of service which Riley concededly has done. Section 3(19), 29 U.S.C. § 1002(19), defines "nonforfeitable" as meaning, among other things, a claim "which is unconditional and which is legally enforceable against the plan." The provision of Article II A, § 13, quoted above, fn. 2, places a condition on Riley's claim to the monthly benefits to which he would otherwise be entitled and makes his claim legally unenforceable against the Plan; it thus constitutes a forfeiture within the meaning of ERISA. This is nonetheless true because, despite the contrary thrust of the language of the plan, the trustees are willing to pay the benefits if Riley quits his government job. The installments accruing in the interim have nonetheless been forfeited, as presumably would be clear to everyone if this were a case in which the pensioner died while in government service and thus was deprived of all benefits accruing after his suspension or if the pension were derived in part from his own contributions. When § 203(a)(3)(B) provides that certain kinds of suspensions are not forfeitures, it necessarily implies that those not falling within its terms are. Cf. *Keller v. Graphic Systems of Akron, Inc.*, 422 F.Supp. 1005, 1008 (N.D.Ohio 1976) (concluding that when ERISA applies, since forfeitures because of post-termination competitive employment are not excepted they are prohibited); 1 CCH Pension Plan Guide ¶ 2584 (forfeitures for cause). If the language of the statute left any doubt that Riley is entitled to prevail unless the conditions of § 203(a)(3)(B)(ii) have been met, this would be removed by the portions of the Conference Report quoted in the margin.[3]

The question then is whether Riley is now "employed in the same industry, in the same trade or craft and the same geographic area covered by the plan . . ." The defendant appears to believe we must answer that question just as we would answer the related question concerning the interpretation of Article II A, § 13 of the Plan's Regulations. The belief is unfounded. Article IV, § 4 of the Plan provides:

---

3. *Permitted forfeitures of vested rights*

Under the conference substitute, except as outlined below, an employee's rights, once vested, are not to be forfeitable for any reason. An employee's rights to benefits attributable to his own contributions may never be forfeited.

(1) The plan may provide that an employee's vested rights to benefits attributable to employer contributions may be forfeited on account of the employee's death (unless a "joint and survivor" annuity is to be provided).

(2) Also, the plan may provide that payment of benefits attributable to employer contributions may be suspended for any period in which the employee is reemployed by the same employer under whose plan the benefits are being paid (in the case of a single employer plan). In the case of a multiemployer plan, however, a suspension of benefit payments is permitted when the employee is employed in the same industry, in the same trade or craft and also in the same geographical area covered under the contract, as was the case immediately before he retired. Regulations with respect to the suspension of benefits are to be prescribed by the Department of Labor.

House Conference Report No. 93–1280, 93d Cong., 2d Sess. 1974, reproduced in 3 [1974] U.S.Code Cong. & Admin.News, pp. 5038, 5052–53.

Other portions of the legislative history referred to by defendant's counsel at oral argument and dealing with statutory sections different from those at issue here, do not weaken the conclusions drawn in the text. See S.Rep. No. 93–127, 93d Cong., 2d Sess., reproduced in 3 [1974] U.S.Code Cong. & Admin.News at 4865; H.R. Rep. No. 93–1280, 93d Cong., 2d Sess., reproduced in 3 [1974] U.S.Code Cong. & Admin.News at 5076.

4. Coverage and Eligibility. The Trustees, by majority vote, shall have full authority to determine all questions of coverage and eligibility to participate in and receive the benefits of the Plan and shall have the power to construe the provisions of this Agreement and the terms used herein and any such questions so determined or any construction so adopted by the majority of the Trustees shall be binding upon all parties and persons concerned.

When such a power has been conferred, the judicial role is limited to determining whether the trustees' interpretation was made rationally and in good faith—not whether it was right. *Danti v. Lewis*, 114 U.S.App.D.C. 105, 312 F.2d 345 (1962); *Beam v. International Org. of Masters, Mates and Pilots*, 511 F.2d 975, 979–80 (2 Cir. 1975); *Gomez v. Lewis*, 414 F.2d 1312, 1313–14 (3 Cir. 1969). With respect to § 203(a)(3)(B)(ii), however, the question—at least until the Secretary of Labor issues regulations—is what Congress meant, not what the Plan meant, and we must treat this as we would any other question of statutory construction.

In contrast to words like "forfeitable" and "vesting," which have a meaning in a pension lexicon quite different from that in ordinary speech, Congress returned to the vernacular when it spoke of "the same industry" and "the same trade or craft." Despite the enormous growth of the public sector, government is not commonly regarded as an "industry"; certainly it is not considered to be "the same industry" as businesses conducted for profit.[4] It is true that employment by the government in a task similar to that which port engineers perform for private employers may involve the same evil of "doubledipping," i. e., a pensioner's taking a job that would otherwise have been available to a member of the union who had not retired, as private employment would. The Trustees say that this was the evil at which Art. II A, § 13 was aimed, and they argue that § 203(a)(3)(B)(ii) should be construed accordingly. But it would be sheer speculation to assume that Congress wished courts to depart so far from the ordinary meaning of its language; for all we know Congress might have been happy to have a body of skilled pensioners willing to work for the Government at federal salaries. We need not now decide how Riley would fare if the Secretary of Labor were to issue regulations that would construe "in the same industry" to include government employment; whatever the dubieties concerning the respect owing to agency regulations when challenged as exceeding statutory authority, see 1 Davis, Administrative Law Treatise, §§ 5.03–.05 (1958); Administrative Law of the Seventies §§ 5.03–.05 (1976), at least they are entitled to some, particularly since § 203(a)(3)(B)(ii) explicitly directs the Secretary to promulgate the necessary regulations. But so far he has issued no regulations defining "industry" under § 203(a)(3)(B)(ii), and the regulations the Secretary has issued under sections of ERISA containing special provisions applicable to "the maritime industry"[5] do not advance the trustees' contention that government service is comprehended.

In the absence of a question relating to the effective date of ERISA as applied to this case, we would therefore reverse the judgment of the district court and direct

---

4. The Census defines "industry" as "a number of establishments producing a single product or a closely related group of products." U.S. Dept. of Commerce, Bureau of the Census, Statistical Abstracts of the United States 756 (1976). Ballentine's Law Dictionary 616 (3d ed. 1969) defines it as:

   A business, plant, or enterprise for the production of goods, merchandise, machines, motor vehicles, etc. for sale, particularly a manufacturing plant employing many people and requiring the support of large capital.

5. (b) Definition. For purposes of sections 202, 203 and 204 of the Act and sections 410 and 411 of the Code, the maritime industry is that industry in which employees perform duties on board commercial, exploratory, service or other vessels moving on the high seas, inland waterways, Great Lakes, coastal zones, harbors and noncontinuous areas, or on offshore ports, platforms or other similar sites.

   41 Fed.Reg. 56482 (1976).

the entry of a declaration that Riley is entitled to his monthly pension benefits from the date of his retirement on May 1, 1975, unless regulations hereafter issued by the Secretary of Labor under § 203(a)(3)(B)(ii) should afford a basis for a contrary decision. However, such a question does exist. Although defendant's counsel has not raised the point, we think it best to consider it since, except for two items that can readily be determined on remand, it implicates solely questions of law, many of which have been briefed and argued.

ERISA was enacted on September 2, 1974, eight months before Riley's retirement, but each part has a special provision concerning its effective date. Under § 211(b)(2), 29 U.S.C. § 1061(b)(2), the usual effective date of Part 2, which contains the vesting provisions pertinent to this appeal, in the case of a plan in existence on January 1, 1974, as MEBA's was, is for "plan years beginning after December 31, 1975." Although the record does not inform us on the subject, we shall assume for purposes of this opinion that MEBA's "plan year" was the calendar year; if that assumption should be wrong, the error can be corrected on the remand that is required in any event. However, Part 2, could become applicable at an earlier date under § 211(d), 29 U.S.C. § 1061(d), which provides:

> If the administrator of a plan elects . . to make applicable to a plan year and to all subsequent plan years the provisions of the Internal Revenue Code of 1954 relating to participation, vesting, funding, and form of benefit, this part shall apply to the first plan year to which such election applies and to all subsequent plan years.

If the administrator of the MEBA plan made such an election for a "plan year" beginning on or earlier than May 1, 1975, the vesting provisions would be fully applicable and Riley would be entitled to the declaration we have outlined. However, we shall assume, again subject to correction on remand, that no such election was made. On these highly likely assumptions the vest-ing provisions of ERISA did not become applicable to Riley until January 1, 1976.

Several courts have held that when a complete denial of benefits occurs before the effective date of an ERISA section, no action based on that section can be maintained. See *Keller v. Graphic Systems*, 422 F.Supp. 1005 (N.D.Ohio 1976); *Morgan v. Laborers Pension Trust Fund for Northern California*, 433 F.Supp. 518, 523–24 (N.D. Cal.1977); *Knauss v. Gorman*, 433 F.Supp. 1040, 1042 (W.D.Pa.1977) ("Knauss' rights, if any, had accrued . . . [in] December 1972 and there is nothing in ERISA indicating any intent to affect the rights of those persons whose rights were already determined at some previous date"). This means that if the MEBA Plan in fact imposed a complete forfeiture of all rights upon his resumption of work as its letter indicates, rather than mere suspension as the trustees have construed it, Riley would have no claim under vesting provisions of ERISA which had not yet become effective as to him. However, since the trustees only suspended his benefits during continuation of his work for the Maritime Administration, each month's denial constitutes a separate forfeiture and a separate wrong, and Riley has a claim under ERISA from the date when the vesting provisions became applicable. Although this conclusion may appear to involve the anomaly that the greater the wrong the less the remedy afforded by ERISA, it seems required to avoid two other even worse results. To entertain claims under ERISA when complete forfeiture had occurred before the statute's effective date would mean, as Judge Renfrew noted in *Morgan, supra*, 433 F.Supp. at 523, "[A]nyone who has ever been denied pension benefits would be able to invoke ERISA merely by reapplying and having his application denied again on the same grounds." On the other hand, a rule precluding any relief to someone whose benefits have merely been wrongfully suspended would mean that someone in Riley's position could simply quit his government job for a month or two, apply for the re-

sumption of his pension payments that would be forthcoming, and then precipitate the issue again by resuming his work for the Maritime Administration, this time after the statute's effective date. Congress could hardly have meant to require so much wasted motion. It follows that Riley is entitled to the relief we have indicated from the date when the vesting provisions of ERISA became effective with respect to him.

■ In contrast Riley's entitlement to monthly payments prior to that date depends on the principles of law relied on by the district court in the portions of its opinion other than that dealing with ERISA. Although the Trustees' ruling that government employment constituted service in the American flag maritime industry is an unusual interpretation of the word "industry" as used in the plan, we agree with the district court that it was within the authority conferred by Article IV, § 4 of the Plan. We also agree that the discrimination permitting a marine engineer whose credits are based solely on shipboard service to take shoreside employment in the maritime industry after retiring without undergoing suspension, whereas one whose pension credits are partially land-based may not, is not so egregious that it would have caused the Plan to violate general principles of law. *Beam v. International Org. of Masters, Mates and Pilots, supra,* 511 F.2d 975. Prior to 1968 all members of the MEBA Pension Plan had been engaged in employment aboard a vessel and the restriction of Art. II A, § 13 was limited to work at sea. When port engineers were allowed to enter the Plan, the Trustees amended § 13 to cause a suspension of benefits because of post-retirement shoreside employment to any participant with credits from shoreside work. The argument of the Trustees for exempting from the shoreside ban of § 13 marine engineers all of whose credit comes from work at sea is that for them shoreside employment is a new career, whereas for others it is a continuation or resumption of

a kind of work already done. The argument is not overpowering, and even if the general principle is accepted, one can readily conceive of a finer tuning that would take account of the relative amounts of credits earned at sea and ashore. Nevertheless the distinction is not arbitrary or capricious on its face, and Riley produced nothing to show that it was improperly motivated. As said by Judge MacMahon, "the law does not require the best possible eligibility requirements but only that those requirements have a rational justification."

We reach the same conclusion if we look not simply to general principles of law but also to § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). That section limits employer payments to employee welfare or pension funds to those which are "for the sole and exclusive benefit of the employees of such employer." There are numerous holdings that while this limitation does not give federal courts jurisdiction to examine the propriety of the denial of a pension under the terms of a plan or maladministration by trustees, it does empower them to examine as to the existence of "structural deficiencies." See, e. g., *Alvares v. Erickson,* 514 F.2d 156, 165 (9 Cir.), *cert. denied,* 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975); *Burroughs v. Board of Trustees of Pension Trust Fund for Operating Engineers,* 542 F.2d 1128, 1131 (9 Cir. 1976), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977). See generally *Johnson v. Botica,* 537 F.2d 930, 934 (7 Cir. 1976). While endorsing the distinction, this court has not displayed enthusiasm for the notion that § 302(c)(5) gave the federal courts a roving jurisdiction over even the structure of pension plans. See *Lugo v. Employees Retirement Fund of Illumination Products Industry,* 529 F.2d 251, 254–55 (2 Cir.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976). It is not obvious from either the language of § 302(c) or from the legislative history why a plan is not "for the sole and exclusive benefit of the employees of such employer" simply because the agreed division of pen-

sion benefits strikes a court as unfair; the case might stand differently if, e. g., it were shown that the benefits were so meagre that unnecessary reserves were being accumulated or that the plan was heavily weighted in favor of a class of employees from which union officials were commonly drawn. In any event, now that we have ERISA with its extensive provisions for fiduciary responsibility, Part 4, §§ 401–414, 29 U.S.C. §§ 1101–1114, and the direction implicit in § 514(a), 29 U.S.C. § 1144(a), superseding state laws, for the federal courts to develop a federal common law with respect to plans covered by ERISA, there can be little justification for relying on § 302(c)(5) to accomplish the same goals. Indeed, as Judge Feinberg said in *Lugo*, after referring to ERISA:

> The careful attention paid by Congress in that recently enacted statute to the problem of effective dates and coverage makes us hesitate to conclude that the courts have long been authorized via the fifth exception to a criminal statute . . to create obligations similar to those of ERISA.

529 F.2d at 255 (footnote omitted).

The question remains whether suspension of Riley's pension prior to the effective date of the vesting provisions of ERISA violates any other provision of that statute. Section 414, 29 U.S.C. § 1114, makes most of the general fiduciary provisions of Part 4 effective on January 1, 1975 and § 514(a), 29 U.S.C. § 1144(a), which, as noted, preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," also became effective on that date. It has been suggested that after January 1, 1975, new federal standards of fairness must apply with respect to charges of breach of fiduciary duty not explicitly covered by Part 4 of ERISA and that federal courts should look to the whole of ERISA, including the vesting provisions which had not yet become effective, as a source of federal policy. See *Amory v. Boyden Associates, Inc.*, 434 F.Supp. 671

(S.D.N.Y.1976); *Mosley v. National Maritime Union Pension & Welfare Plan*, 438 F.Supp. 413 (E.D.N.Y., 1977) (Mishler, C. J.); *Ellis v. Lionikis*, 152 N.J.Super. 321, 377 A.2d 1208 (1977). We have no difficulty with the first branch of the argument, cf. *Azzaro v. Harnett*, 414 F.Supp. 473 (S.D.N.Y.1976), aff'd 553 F.2d 93 (2d Cir. 1977), but we know of no federal standard that would here be applicable other than the arbitrary or capricious one already discussed, see *Morgan, supra*, 433 F.Supp. at 524; cf. *Rehmar v. Smith*, 555 F.2d 1362, 1371 (9 Cir. 1976). With respect to the second branch of the argument, care must be taken not to subvert the intention of Congress to postpone the effective date of the vesting provisions in order to afford a fair opportunity to bring plans and their application in line with the new vesting requirements. We need not decide whether in some truly shocking case a court might properly condemn the denial of a pension that would not have been arbitrary or capricious or in violation of any specific fiduciary provision of ERISA but would be contrary to the vesting provisions even though it preceded the effective date of the latter. Almost by definition such cases will rarely arise. This surely is not one of them, and Riley is not entitled to relief for any period before the vesting provisions became effective as to him.

The judgment in favor of defendant is reversed and the cause is remanded for further proceedings consistent with this opinion. No costs.