**Antoinette PERNELLI, as Voluntary Administratrix of the Estate of Luke Pernelli, Plaintiff,**

v.

**LOCAL 50 CANDY AND CONFECTIONARY UNION AND INDUSTRY PENSION FUND, Agnes De Polo, Individually and in her capacity as the Chairman of the Board of Trustees of the Local 50 Candy and Confectionary Union and Industry Pension Fund, and Mike Anzalone, Anthony Speranza, George R. Frederick, Alvin Erlich, Edward W. Bretch, Crawford Bonow, etc., Trustees, Defendants.**

No. 77 C 1268.

United States District Court, E. D. New York.

Oct. 2, 1979.

Legal Services for the Elderly Poor, for plaintiff by David S. Preminger, Mark H. Spires, New York City.

Perlmutter & Reich, New York City, for defendants by Leon Reich, New York City.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

In this motion for partial summary judgment, plaintiff seeks to establish her right to payments of early retirement benefits from an industry pension fund administered by Local 50 Candy and Confectionary Union, and alleged to have been wrongfully withheld from her late husband, Luke Pernelli. Plaintiff seeks past benefits at the rate of $45 per month, commencing with the date of her husband's early retirement in November 1971, through December 1977 with interest.

■ Before addressing the merits of the motion, it is necessary to determine whether the court has jurisdiction of the subject matter of this action. Although defendants appear to reserve their right to argue the question of jurisdiction, the court is bound to consider the question now, whether explicitly raised or not. Rule 12(h)(3), F.R. Civ.P.; *Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624 (2 Cir. 1976).

Defendants' jurisdictional attack is presumably based on the fact that the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*, one of plaintiff's asserted jurisdictional bases, did not become effective until September 2, 1974, after plaintiff's claim arose and thus does not provide a jurisdictional basis for this action. While the issue is not free from doubt, see *Riley v. MEBA Pension Trust*, 570 F.2d 406, 413 (2 Cir. 1977), we need not decide whether this case warrants special treatment since it is the court's opinion that plaintiff's action rests properly upon an alternative basis of subject matter jurisdiction.

Plaintiff asserts that defendants' conduct also violates provisions of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), and thus jurisdiction is properly founded on § 302(e) of the Act, 29 U.S.C. § 186(e). She claims that under § 302(c)(5), pension funds established pursuant to a collective bargaining agreement must be "for the sole and exclusive benefit of the employees." While the Court of Appeals for this circuit has endorsed a narrow view of jurisdiction over disputes such as presented here, see *Riley v. MEBA Pension Trust, supra,* 570 F.2d at 412; *Lugo v. Employees Retirement Fund of Illumination Products Industry,* 529 F.2d 254–55 (2 Cir.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976), it has nonetheless held that the LMRA does empower federal courts to examine the denial of a pension under the terms of a plan with respect to the existence of "structural deficiencies in the plan," *Riley v. MEBA Pension Trust, supra,* 570 F.2d at 412.

Under the circumstances of this case, plaintiff's claim that the plan is overly exclusive and prevents early retirees from engaging in any employment whatsoever, challenges the provisions themselves and squarely presents the question whether they violate the § 302(c)(5) mandate of "sole and exclusive benefit," a claim over which this court has jurisdiction. See *Lugo v. Employees Retirement Fund of Illumination Products Industry, supra,* 529 F.2d at 256. See also *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

Turning to the merits, it appears that the material facts are undisputed. Plaintiff's late husband was employed for 39 years by the Loft Candy Corporation until the factory ceased operations in November 1971. He became a member of Local 50 in 1942 when the Loft employees were unionized. In 1958, pursuant to a collective bargaining agreement, a Trust Agreement was executed by union and employer designated trustees, creating the Local 50 Candy and Confectionary Union and Industry Pension Fund. In April 1971, when the factory was about to close operations, Mr. Pernelli, on the advice of Agnes De Polo, the chairman of the Board of Trustees, filled out an application for benefits under the Pension Fund.

At the time of the Loft closing, Mr. Pernelli was 55 years old and therefore eligible for "early retirement" benefits. Since he had no other source of income and was unable to support a family of four on the approximately $45 per month provided by the plan, he began to work for the United States Postal Service in December 1971.

He continued working there through December 1976.

In 1973, Mr. Pernelli wrote to Agnes De Polo, inquiring about his benefits. Ms. De Polo responded in a letter dated November 12, 1973, that, since he had "not retired," his application was deemed withdrawn. Ms. De Polo stated that it would be necessary for him to submit a new application in order to receive any pension benefits in the future. Accordingly, in March 1974, Mr. Pernelli notified De Polo that he wished to take advantage of the plan's early retirement provisions and requested the necessary application forms. In a letter dated May 24, 1974, he was informed that his application for benefits had been denied by the trustees because more than two years had elapsed since he last earned pension credit as required by the terms of the plan.

Plaintiff relies on the express terms of Article II, § 6, of the plan, which states that an employee covered by the fund who at retirement has reached the age of 55 and has accumulated at least 15 years of pension credit is entitled to early retirement benefits.

The parties' disagreement stems from their conflicting interpretations of what it means to be "retired" for purposes of the Pension Fund. According to defendants, Mr. Pernelli did not retire when he left the employ of Loft because he continued to work, albeit in a field outside the scope of the Pension Fund. Since he failed to earn pension credits for more than two years after leaving Loft, they claim he forfeited any pension credits he had previously accumulated. Plaintiff for her part contends that although Mr. Pernelli did not cease working altogether, he was retired within the language of the Pension Fund and therefore entitled to benefits. A resolution of the issue of whether Mr. Pernelli's employment with the Postal Service prevented him from being "retired" as that term is used in the plan requires an examination of Article II, § 12, which refers to "retirement" for early retirement pensioners.

Article II, § 12, provides as follows:

"An employee who retires on an Early Retirement Pension shall cease from engaging in any employment or gainful occupation covered by the Federal Insurance Contributions Act. If a pensioner enters such employment or activity, pension benefits shall not be payable for the months of such activity plus six additional months."

Plaintiff argues that this provision requires only that a retiree refrain from working in any employment covered by the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. §§ 3101 *et seq.*, or in any gainful occupation covered by FICA. Since § 3121(b) of the Act excepts from its definition of "employment" any "service performed in the employ of the United States or in the employ of any instrumentality of the United States, if such service is covered by a retirement system established by a law of the United States," plaintiff contends that her husband's job with the Postal Service did not affect his eligibility for early retirement benefits.

According to defendants, the words "covered by the Federal Insurance Contributions Act" refer to and modify the term "gainful occupation" and not "employment." The wording was designed, they argue, to accomplish two purposes. First, it permits the bona fide early retiree to receive income from occupations that do not fall within the coverage of FICA, such as ownership of real estate or investment in securities. Second, it prevents plan members who give up their jobs covered by the plan from receiving early retirement benefits while they are gainfully employed.

■ Generally, the trustees of a pension plan have complete discretion to decide questions of coverage and eligibility. See *Pete v. United Mine Workers of America Welf. & R.F. of 1950*, 517 F.2d 1275, 1283 (D.C.Cir. 1975). The role of the court is limited to determining whether the trustees have acted in an arbitrary and capricious manner. See *Riley v. MEBA Pension Trust, supra*, 570 F.2d at 412; *Johnson v. Botanica*, 537 F.2d 930 (7 Cir. 1976).

A close analysis of Article II, § 12, indicates that despite the claimed intentions of the trustees of the Pension Fund in drafting this provision, the language used simply does not permit the interpretation defendants have adopted. It is the court's opinion that the words "Federal Insurance Contributions Act" modify both "employment" and "gainful occupation." The second sentence of the section makes this interpretation clearer. The reference to "*such* employment" indicates that there are types of employment a pensioner may undertake without jeopardizing his right to receive benefits. The writers of the provision easily could have written, "If a pensioner enters such activity or *any* employment," if that is what they intended. Similarly, the entire section could have, and should have been written to express exactly what the trustees contemplated.

Under the present wording of the section it would not have been unreasonable for plaintiff's husband or any other employee covered by the plan to assume that he could take a job in any area not covered by FICA and simultaneously continued to receive pension benefits from the Local 50 Pension Fund.

Since this case does not present an issue of material fact and plaintiff is entitled as a matter of law to the relief she seeks, summary judgment is appropriate. *SEC v. Research Automation Corp.*, 585 F.2d 31 (2 Cir. 1978); *Judge v. City of Buffalo*, 524 F.2d 1321 (2 Cir. 1975); *Healy v. James*, 319 F.Supp. 113 (D.Conn.1970), *aff'd*, 445 F.2d 1122 (2 Cir. 1971), *rev'd on other grounds*, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972).

Accordingly, plaintiff's motion for summary judgment is granted and final judgment is directed in her favor, which shall provide for an award of pension benefits pursuant to the terms of the plan, from the date of her husband's termination of employment at Loft in November 1971 until the date of his death with appropriate interest, computed in the amount to which he would have been entitled by reason of his years of service. Each party shall bear their own costs and attorney's fees.

Settle judgment on five days notice.

SO ORDERED.