Lawrence H. ROSENTHAL, Plaintiff,

v.

NATIONAL LIFE INSURANCE COMPANY, Agency Employees Pension Plan, John A. Newman, Elliot J. Hodes, and M. P. Arden Associates, Inc., Defendants.

No. 78 Civ. 906 (KTD).

United States District Court, S. D. New York.

Jan. 7, 1980.

Weingold, Berman & Koerner, New York City, for plaintiff; Carl Seldin Koerner, Margaret Bliss Hannigan, New York City, of counsel.

Frederic H. Bertrand, Montpelier, Vt., and LeBoeuf, Lamb, Leiby & MacRae, New York City, for defendants Nat. Life Ins. Co., and Agency Emp. Pension Plan; Grant S. Lewis, William G. Primps, Mary Jo Eyster, New York City, of counsel. .

Robert D. Costello, New York City, for defendants John A. Newman, Elliot J. Hodes, and M. P. Arden Associates, Inc.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

The plaintiff, Lawrence Rosenthal, has been employed by various general agents of defendant National Life Insurance Company [hereinafter referred to as "the Company"] for twenty-eight years and is a participant in the Company's "Agency Employees Pension Plan" [1] [hereinafter referred to as "the Plan"]. He instituted the instant action under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. [hereinafter referred to as "ERISA"] for a declaratory judgment against the Company, the Plan and the three general agents by whom he has been employed during his twenty-eight year tenure. By this, he seeks to resolve his dispute with defendants as to whether or not certain contractual payments made to him, characterized as "commission overrides," are to be included in calculating his pension benefits.

National Life Insurance Company is a large mutual insurance company whose

---

1. This Plan originally became effective on January 1, 1958 and has been amended several times since. Most recently, the Plan was amended on January 1, 1976 to conform with ERISA requirements. Unless otherwise noted, all references are to the most recent amended Plan.

home office is in Vermont. It sells its policies through the use of general agents. These agents, in turn, hire their own personnel. A typical employee executes a "Career Agent's Contract" with the Company and may, in addition, have an employment contract with the general agent for whom he or she works directly. Although Lawrence Rosenthal had been affiliated with the Company since 1951, it was not until 1962 that he executed an employment contract with the Elliot Hodes Agency [hereinafter referred to as "the Hodes Agency"]. This agreement provided for compensation which was calculated on the basis of the Agency's net profits with a $200 per week drawing on the account of these profits. In addition, and pertinent to the instant dispute, the contract provided for a post-termination share of renewal commissions for business originally brought to the Agency during Rosenthal's employment there. Specifically, the contract provided:

5TH: After termination of this agreement, Associate General Agent shall be entitled to receive one-third (⅓) of all overriding renewal commissions payable to General Agent by the company under General Agent's Contract with respect to business, the applications for which were transmitted to the Home Office of the Company prior to the termination date of this agreement . . . .

After termination of the contract with Elliot Hodes on August 31, 1969, Rosenthal entered into a new agreement and began work for the John Newman Agency [hereinafter referred to as "the Newman Agency"]. Plaintiff's first contract with the Newman Agency provided for a "base salary" and a share of renewal commissions during his employment. The contract also contained a provision for post-termination commissions similar to that in the agreement with the Hodes Agency. This clause read:

4. After termination of this agreement, Associate General Agent shall be entitled to receive 20 per cent of overriding renewal commissions, as defined in paragraph 3 of this agreement, payable to General Agent by Company pursuant to his General Agent's Contract with respect to all business placed in force after the effective date of this agreement and for which applications were transmitted to the Home Office prior to the termination of this agreement . . . .

In 1972, Rosenthal renegotiated his contract with the Newman Agency. This new agreement raised the plaintiff's "base salary" and eliminated reference to a share in commissions during employment or a post-termination commission. Instead, the contract provided for a "growth-bonus", Rosenthal's share in the "Growth Expense Allowance" paid to the Agency by the Company.

In October, 1974, Rosenthal terminated his employment with the Newman Agency and began work for M. P. Arden Associates, Inc., another General Agent of the Company. He continued to be so employed until the commencement of this action.

At issue in the instant case are the post-termination commissions provided for in paragraph 5 of Rosenthal's agreement with the Hodes Agency and paragraph 4 of his earlier agreement with the Newman Agency. More specifically, the issue is whether or not these payments are "compensation" to be considered in calculating plaintiff's pension benefits as defined by the Plan. For the first time in 1970, Rosenthal began to receive substantial post-termination commissions pursuant to his contract with the Hodes Agency. These payments were made while he was employed by the Newman Agency.

Compensation, as defined by § 1.9 of the Agency Employees Pension Plan, is:

The base monthly compensation received by an Employee from his Employer, regardless of the intervals of payment or method of computation. Compensation shall not include overtime and non-contractual bonuses.

Plaintiff contends that "base monthly compensation" is not limited to salary and should include post-termination commissions and growth-bonus payments made by his former employers within the National Life Insurance Company organization. He

made this argument with respect to growth-bonuses to the ERISA Committee [hereinafter referred to as "the Committee"] charged with Administration of the Plan on October 11, 1974. In February, 1976, the Committee agreed that growth-bonuses paid under the Newman contract would be included in compensation. Finally, in September, 1976, Rosenthal requested, for the first time, that his post-termination commissions be included in "compensation" for the purposes of determining his pension benefits. In an April 4, 1977 letter from the Committee to Rosenthal, this request was denied. The letter stated, in pertinent part:

> After giving the matter careful thought, the ERISA Administration Committee, of which I am Chairman, has concluded that post-employment receipts would not be includible.
>
> "Compensation" for purposes of the Plan means "base monthly compensation received by an Employee from an Employer". The monies you are concerned with are not received from or on behalf of your employer, but rather from or on behalf of people who were formerly your employers.
>
> In addition, all of these monies in question are *commissions* and as such cannot be characterized as "base monthly compensation".

Plaintiff's Appendix of Exhibits, Exhibit Q. On Rosenthal's further request, his claim and the Committee's decision were reviewed. Upon reconsideration and after further investigation, Rosenthal's claim was finally rejected.

By this action plaintiff challenges the Committee's determination that post-termination renewal commissions not be included in compensation for the purpose of calculating his pension benefits. Plaintiff makes the instant motion for summary judgment, pursuant to Fed.R.Civ.P. 56(a), claiming that the decision is "contrary to the language of the Respective Employment Agreements and of the Plan itself" and that there is no genuine triable issue of material fact. Defendants have cross-moved under the same rule for summary judgment.

In deciding a motion for summary judgment, I must "resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." *Schiess-Froriep Corp. v. S.S. Finnsailor,* 574 F.2d 123, 126 (2d Cir. 1978) *citing Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317 (2d Cir. 1975). Moreover, the burden is on the moving party to "demonstrate the absence of any material fact genuinely in dispute." 574 F.2d at 126.

For the reasons outlined below, I find that plaintiff has failed to demonstrate that he is entitled to summary judgment. His motion is accordingly denied. Moreover, I find that the facts as set forth by both parties to this action warrant the granting of summary judgment to defendants. Consequently, defendants' motion for summary judgment is granted.

In support of their cross-motion and in opposition to plaintiff's motion, defendants argue that the ERISA Administration Committee's determination concerning Rosenthal's "compensation" should be upheld because it is not "arbitrary or capricious." An examination of both ERISA and the case law interpreting the Act, indicates that this standard should be applied to the actions of the Committee. Upon application of this test, it is clear that the Committee's determination must be upheld.

ERISA requires that all assets of an employee benefit plan be held in trust by a trustee who shall be appointed by a "named fiduciary" or by the trust or plan instrument. 29 U.S.C. § 1103. Fiduciary responsibilities and penalties for their violation are outlined in 29 U.S.C. §§ 1101–1114.[2] In addition, § 9.1 of the Agency Employees Pension Plan here in question provides that

> The ERISA Administration Committee is hereby vested with all power and authority necessary to carry out the terms and intentions of the Plan. Its members shall

---

2. These sections are contained in Part 4 of ERISA, entitled "Fiduciary Responsibility."

be the Named Fiduciaries within the meaning of the Act.

Recent case law in the Second Circuit makes it clear that the determinations of the "named fiduciary" concerning benefits or eligibility of participants in a pension plan are to be upheld unless they are "arbitrary and capricious." *Riley v. MEBA Pension Trust,* 570 F.2d 406, 413 (2d Cir. 1977). *See also Cawley v. NMU Pension and Welfare Plan,* 457 F.Supp. 301, 303 (S.D.N.Y. 1978). Plaintiff contends that these cases are distinguishable and that the "arbitrary or capricious" standard should not apply in the instant case. I must, however, disagree.

It is true that the cases cited by defendants in support of the "arbitrary and capricious" standard generally involved pension plans which were collectively bargained for and which had employer and employee representatives on the Administration Committee. *See e. g. Rehmar v. Smith,* 555 F.2d 1362 (9th Cir. 1977); *Taylor v. Bakery and Confectionary Union and Industry International Welfare Fund,* 455 F.Supp. 816 (E.D. N.C.1978). In contrast, the Plan in question here was unilaterally established by the employer and members of the Committee are all affiliated with the Company. Nevertheless, the strict fiduciary provisions of ERISA apply equally to the Committee involved herein as to the fiduciary of any other plan, whoever the fiduciary may be. ERISA explicitly provides that:

a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

29 U.S.C. § 1104(a)(1). Moreover, § 9.7 of the Agency Employees Pension Plan reiterates the fiduciary responsibility of the Committee as follows:

In performing their duties, the members of the Committee shall act solely in the interest of Participants and their Beneficiaries and

(a) for the exclusive purposes of providing benefits to Participants and their Beneficiaries;

(b) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; and

(c) in accordance with the documents and instruments governing the Plan insofar as such documents are consistent with the provisions of Title I of the Act.

As indicated above, fiduciary responsibilities and the concomitant penalties for violation thereof, are explicitly detailed in both ERISA and the Plan. Where, as here, the fiduciary is given substantial authority in interpreting the Plan, I will not interfere in the absence of "arbitrary and capricious" actions of the fiduciary. This Court will not otherwise inject itself into the mechanisms specifically set up by ERISA to protect beneficiaries and participants in pension plans. *Riley v. MEBA Pension Trust,* 570 F.2d 406 (2d Cir. 1977). Furthermore, there is nothing to suggest that such fiduciary obligations will not be fulfilled simply because Committee members are affiliated with the employer.

■ Here the facts clearly establish that the Committee's interpretation of "compensation" as defined in the Plan was not arbitrary or capricious. Lawrence Rosenthal's request was first formally considered by the ERISA Administration Committee at its March 16, 1977 meeting. As a result of this meeting, the Clerk of the Committee, also a member of the Company's legal staff, was asked to prepare a legal memorandum on the issues presented by Rosenthal's request. The Clerk's conclusion that "compensation" under the Plan did not include commission overrides was unanimously adopted by the Committee and a letter to that effect was

sent to plaintiff on April 4, 1977.[3] Upon reconsideration of its determination at plaintiff's request, the Committee affirmed its original decision on June 22, 1977. Thereafter, in connection with a possible settlement of plaintiff's claim, the Committee conducted an investigation into the understanding of Rosenthal and the general agents as to whether or not commission overrides were to be included in compensation. In a letter dated December 19, 1977, plaintiff's attorneys were informed:

it unfortunately took this long to conduct our inquiries, make our analysis and arrange for a full and final discussion. In brief, a decision was reached that the Company should reject Larry's claim. We had tried to determine whether or not there was any evidence at all pointing to a conclusion that either Larry, Mr. Hodes or Mr. Newman ever had any contemplation or understanding that the overrides were to be included in the calculations. We found that none, and in point of fact, we found just the opposite, that all of the parties understood that such deferred compensation should not and would not be included.

Affidavit of Irwin Park, September 19, 1979, Exhibit 10.

Plaintiff does not dispute the above facts. Rather, he argues that the actions of the Committee were arbitrary, capricious, and in bad faith. In support of this contention, he argues, quite summarily, that the express terms of the Plan were ignored and previous policy reversed.[4] Plaintiff's Memorandum in Opposition to Defendants' Cross-Motion for Summary Judgment at 6–10. There is no evidence to support these contentions. Moreover, there is nothing to indicate that Lawrence Rosenthal was singled out for treatment different from other pension participants.

The undisputed material facts in this case lead to the inescapable conclusion that the ERISA Administration Committee was not acting arbitrarily or capriciously when it rejected plaintiff's claim.

In any event, it is evident that plaintiff, under the circumstances of this case, must be equitably estopped from asserting his claim against the Committee. Generally, the doctrine of equitable estoppel requires a showing of four elements:

(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Russell Corp. v. United States,* 537 F.2d 474, 484, 210 Ct.Cl. 596 (1976).

These elements have been met in the instant case. First, it is clear that, as early as 1972, plaintiff must be charged with knowledge that his employer was not making contributions to the pension fund on his behalf reflecting the payment to him of post-termination commissions by his previous employer. By his own admission, Lawrence Rosenthal is a non-practicing lawyer, Deposition at 5 and 23, whose job frequently required him to make mathematical calculations. *Id.* at 19–22. He was a high level managerial employee whose title, at least as early as May, 1962, was "Associate General Agent."

As proof of Rosenthal's knowledge, defendants submit, *inter alia,* an Affidavit of Alice Blundo, Office Manager of the Newman Agency, indicating that on January 19, 1972, she sent Larry Rosenthal an internal memorandum which stated:

Dear Larry—based on a monthly salary of $1,416.67 your projected monthly benefit at retirement will be $705.60. The total monthly cost of this plan is $368.74 which is noncontributory.

---

3. The contents of that letter outlining the Committee's reasoning is quoted in the discussion of the facts, *supra* at 1021.

4. Plaintiff also argues that because the Committee agreed to include "growth-bonuses" in "compensation", it must necessarily include post-termination commissions. This argument overlooks a basic distinction between the two; to wit: the former was paid during Rosenthal's employment with the Newman Agency while the latter was to be paid after termination of his employment for a particular agent.

Blundo Affidavit, Exhibit 3. In his October 15, 1979 affidavit, Lawrence Rosenthal in a conclusory allegation denies receipt of this statement. In opposing a motion for summary judgment, "an adverse party may not rest upon mere conclusory allegations or denials." *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). Plaintiff cannot avoid the clear implications of the undisputed facts and create a triable issue of fact by merely denying defendants' allegations.

Even assuming that plaintiff did not receive the memorandum in question, there is more than sufficient evidence to support defendants' estoppel argument. Plaintiff concedes that in early 1974 he discussed the inclusion of growth-bonus payments in compensation with Alma Chaffee, a pension clerk of National Life Insurance Company. Deposition at 176. In fact, it is clear from an October 11, 1974 letter from Lawrence Rosenthal to Alma Chaffee that plaintiff was aware of the specific method used to calculate his monthly salary for the purposes of his pension contribution.[5]

As a result of Rosenthal's request, the Newman Agency began to make contributions to the Plan on the basis of his growth-bonus payments in early 1974. Blundo Affidavit ¶ 8. When asked why he did not question simultaneously the inclusion of commission overrides as well as growth-bonuses and request that his employer make contributions on his behalf for both, Rosenthal responded, "I was wishing to resolve one issue at a time." Deposition at 187. Query whether Rosenthal could be so well informed as to pension benefit contributions based on his growth-bonus and at the same time plead ignorance with respect to override commission contributions.

The evidence submitted in this case makes it abundantly clear that, as early as 1974 or perhaps earlier, plaintiff can be charged with knowledge that no contributions were being made by his sponsors based on post-termination commissions. Nevertheless, knowing that a financial deficiency was growing as a result of these missing contributions, plaintiff did not assert his claim to the Committee until September, 1976.

Second, under the circumstances of this case, plaintiff's actions in requesting that growth-bonuses be included without mentioning commission overrides certainly gave defendants the right to believe that new questions concerning what was "compensation" under Rosenthal's previous employment contracts would not be raised. In fact, in his October 11, 1974 letter to Alma Chaffee, plaintiff indicated:

> I believe that all computations concerning my ultimate pension should hereafter be computed on a final five-year moving average upon the basis of the figures above.

Park Affidavit, Exhibit 1.

Third, affidavits submitted by defendants indicate that they did, in fact, believe that plaintiff's disputes as to the method of computing compensation had been concluded. For example, Alice Blundo states that

> Once Newman and National Life included growth-bonus payments in the calculation of Compensation, thereby agreeing with Mr. Rosenthal's stated views of what comprised "Compensation," I assumed that he was satisfied with his pension treatment. I did not learn that Mr. Rosenthal disputed this calculation of his Compensation and pension benefits as being too low until he informed me, in late 1976, that he was making his claim to the ERISA Administration Committee.

Blundo Affidavit ¶ 8. Irwin Park, Vice-President of Communications of National Life Insurance Company also indicated that

> Newman and I may agree to an amicable termination within the next month or so, I wish to place on record the facts concerning what may be my "Terminal Compensation" within the meaning of paragraph 1.11 of the Trust.

Affidavit of Irwin L. Park, September 19, 1979, Exhibit 1.

---

**5.** The first paragraph of that letter reads:

> Dear Alma:
> Confirming our telephone conversations of yesterday and today, I have reconstructed and understand how the monthly salary of $2,023.12 was computed for the Agency Employees Pension Trust year beginning January 1, 1974. In view of the fact that John

it was with some surprise that I learned in September of 1976 that Mr. Rosenthal was dissatisfied with the method by which the Committee was calculating his Compensation for pension purposes.

Park Affidavit ¶ 5.

Finally, given the growing deficiency of Plan funding due to undercontributions in Rosenthal's behalf, detrimental reliance of the Plan on plaintiff's inaction is clear.

Plaintiff argues that it would be dangerous precedent to put the burden on a pension participant to assert all of his benefit rights at an early stage or be estopped. Suffice it to say that Lawrence Rosenthal, a lawyer with high managerial responsibility with the Company, is far from the ordinary pension participant. Moreover, this burden, if in fact it is one, only arises when the evidence clearly indicates that the participant was aware of his claim and the development of a deficiency in funding of the Plan due to lack of contributions in his or her behalf.

In accordance with the foregoing, plaintiff's motion for summary judgment is denied and defendants' similar cross-motion pursuant to Fed.R.Civ.P. 56 is granted.

Settle judgment on seven days' notice.

So ordered.