Ronald **BRASSORD**

v.

**CONTINENTAL CASUALTY COMPANY.**

**Civ. No. H 82–422 (JAC).**

United States District Court, D. Connecticut.

March 17, 1986.

Daniel E. Livingston, Hartford, Conn., for plaintiff.

Jeffrey S. Goldman, Chicago, Ill., for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

This action is before the court on the defendant's motion for summary judgment on count two of the complaint.[1] The plaintiff has alleged in that count that he was wrongfully denied short-term disability benefits by the defendant in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*

### I.

Ronald Brassord ("the plaintiff") was employed by the Continental Casualty Company ("the defendant")[2] from November 1976 until July 31, 1980. *See* Affidavit of Ronald Brassord (filed Jan. 9, 1984) ("Brassord Affidavit I") at ¶¶ 3, 17. The plaintiff contends that his supervisors mounted a "campaign of harassment" against him beginning in October 1979 that caused him to be "subjected to numerous unwarranted criticisms and to be overwhelmed by unmanageable workloads." *Id.* at ¶ 6. He alleges that his immediate supervisor forced him in March 1980 to request a demotion from claims supervisor to claims adjustor. *Id.* at ¶¶ 7–8. Finally, according to the plaintiff, the tensions of his job caused him to become so "overwhelmed ... [by] stress and depression" that his physician, Dr. Philip Berwick, ordered him on May 28, 1980, to discontinue work temporarily. *Id.* at ¶¶ 9–10. Dr. Berwick provided the plaintiff with a letter, dated May 30, 1980, stating that he "plan[ned] to see Mr. Brassord periodically in the office and would call appropriate consultants in the future if indicated." Supplemental Affidavit of Ronald Brassord (filed July 26, 1985) ("Brassord Affidavit II"), Attachment D.

---

1. The court previously denied the defendant's motions for summary judgment on counts one and three of the complaint. Count one contends that the defendants constructively discharged the plaintiff in violation of his rights under the Age Discrimination in Employment Act, 29 U.S.C. § 623. Count three alleges an intentional infliction of emotional distress under Connecticut common law.

2. This action was originally brought against both Continental Casualty Company and the related CNA, Inc. Defense counsel informed the court at oral argument on March 11, 1986, that Continental Casualty Company is now the only proper defendant in this action. The caption of this case shall therefore be modified accordingly absent objection.

The plaintiff did not return to his job with the defendant after May 28, 1980. He was paid his regular salary until June 11, 1980, at which time his accrued sick days were exhausted. Defendants' Statement of Undisputed Facts Offered in Support of Its Fourth Motion for Partial Summary Judgment (filed Feb. 26, 1985) ("Defendant's Statement") at ¶ 7.

The plaintiff subsequently applied for short-term disability benefits from the defendant by submitting a partially completed claim form and a partially blacked-out version of the letter from Dr. Berwick. Brassord Affidavit I at ¶ 11; Defendant's Statement at ¶ 10. He later read the blacked-out portions of the letter to a personnel officer of the defendant. Brassord Affidavit I at ¶ 13. It is undisputed that various employees of the defendant contacted the plaintiff on at least three occasions in July 1980 to request that he submit further documentation of his medical condition and sign a form authorizing his doctor to disclose his medical records to the defendant. Defendant's Statement at ¶¶ 11–13. The plaintiff was informed on these occasions that he would be terminated from his job if he did not return to work or submit further proof of his claimed disability. *Id.* However, the plaintiff continued to refuse to provide any further information concerning his medical condition. *Id.* The defendant informed the plaintiff on or about July 30, 1980, that his employment would be terminated as of July 31, 1980. *Id.* at ¶ 15; Brassord Affidavit I at ¶ 17.

The plaintiff began work as a partner of Central Adjustment Services on or about September 1, 1980. Brassord Affidavit I at ¶ 23; Deposition of Ronald Brassord (filed March 2, 1983 and April 20, 1983) ("Brassord Deposition") at 13. He did not consult Dr. Berwick or any other physician between May 28, 1980, and September 1, 1980. Brassord Affidavit I at ¶ 25; Brassord Deposition at 446–449, 666; Deposition of Philip Berwick (filed April 12, 1983) ("Berwick Deposition") at 14.

The plaintiff was informed in the course of this litigation that his claim for disability benefits had not been denied on the merits in July 1980 but instead had been held open pending the receipt of further medical information. Defendant's Statement at ¶ 18. He was invited to revive his claim and supply additional information concerning his alleged disability. *Id.* The plaintiff responded by submitting a signed medical release that was devoid of other information. *Id.* The signed form was forwarded by the defendant to Dr. Berwick, who was unwilling or unable to provide any additional information concerning the plaintiff. *Id.*

On April 2, 1984, the defendant, after considering the materials submitted by the plaintiff and the depositions of the plaintiff and Dr. Berwick in this litigation, denied the plaintiff's claim for short-term disability benefits. *Id.* at ¶ 19. The reasons given by the defendant for the denial of benefits were, first, that the plaintiff had not been under the regular care of a physician after May 28, 1980, and, second, that there was no medical evidence that the plaintiff had been "disabled" after the expiration of his accrued sick days on June 11, 1980. *Id.;* Brief in Support of Defendants' Renewed Motion for Summary Judgment on Count II (filed Feb. 26, 1985) ("Defendant's Memorandum"), Attachment C (Letter of Doug Rivard). The plaintiff was informed that he could appeal the decision or supply "any additional information you wish to submit." Defendant's Statement at ¶ 19. The plaintiff appealed the decision but provided no further medical information to the defendant. *Id.* at ¶ 21. The appeal was denied on August 15, 1984. *Id.* at ¶ 23.

## II.

It is undisputed that one requirement of the defendant's short-term disability plan is that applicants "must be under the regular care of a legally qualified physician." Affidavit of Mary Ann Lisner (filed Feb. 16, 1983) ("Lisner Affidavit"), Attachment A (plan description). One of the reasons offered by the defendant for the denial of the plaintiff's claim was that the plaintiff "did not see any physician during [the period for which he claimed

disability benefits] to either monitor [his] medical condition or evaluate [his] ability to return to work." Defendant's Memorandum, Attachment F (Letter of Ronald J. Cherry). *See also id.* at Attachment C (Letter of Doug Rivard).

It is also undisputed that the plaintiff did not consult a physician at any time during the period for which he seeks disability benefits. *See* Brassord Deposition at 446–449, 666; Berwick Deposition at 14. The plaintiff concedes that his only consultation with any physician concerning his allegedly disabling condition occurred some 14 days before the beginning of that period. *See* Brassord Deposition at 447. Indeed, the plaintiff admits that he "avoided" his physician throughout the period in which he claims to have been eligible for disability benefits. *Id.* at 450. Furthermore, the plaintiff's physician has conceded that he "was not monitoring [the plaintiff's] care" during the period at issue. Berwick Deposition at 14.

The Court of Appeals has frequently held that the discretionary decisions of ERISA plan administrators in granting or denying benefits cannot be disturbed "absent a showing of bad faith or arbitrariness." *Miles v. New York State Teamsters Conference Pension and Retirement Fund,* 698 F.2d 593, 599 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983) ("*Miles*"). *See also Pompano v. Michael Schiavone & Sons, Inc.,* 680 F.2d 911, 915 (2d Cir.), *cert. denied,* 459 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607 (1982). Furthermore, with respect to employee benefit plans, "the law does not require the best possible eligibility requirements but only that those requirements have a rational justification." *Riley v. MEBA Pension Trust,* 570 F.2d 406, 412 (2d Cir.1977).

The court has found no evidence that the defendant's requirement that recipients of short-term disability benefits "be under the regular care of a ... physician" evinces any "bad faith or arbitrariness" either on its face or as applied to the plaintiff. The plaintiff has offered nothing more than unsubstantiated allegations, ostensibly based on his "experience in the insurance industry," that such requirements were applied more strictly to him than to unidentified other persons. Brassord Affidavit II at ¶ 2. Such conclusory allegations are insufficient to defeat a motion for summary judgment. *See Quinn v. Syracuse Model Neighborhood Corporation,* 613 F.2d 438, 445 (2d Cir.1980).

The court finds that this eligibility requirement is a rational means for the administrators of an employee benefit plan to fulfill their obligation "to protect all participants in the Plan against payments to unqualified persons," *Marsh v. Greyhound Lines, Inc.,* 488 F.2d 278, 283 (5th Cir. 1974). It cannot be said that the defendant "interpret[ed] the plan in a manner inconsistent with its plain words," *Miles, supra,* 698 F.2d at 599, in denying disability benefits to the plaintiff.[3] Of course, as the Court of Appeals has recognized, the administrator's interpretation of plan rules need not be the one that the court itself would have reached, but only an interpretation that has rational justification. *See Riley v. MEBA Pension Trust, supra,* 570 F.2d at 412.

In sum, the court holds that the plaintiff's failure to remain under the regular care of a physician is sufficient in itself to justify the defendant's denial of disability benefits.

## III.

■ The defendant also denied the plaintiff any short-term disability benefits on

---

**3.** The plaintiff contends that the defendant waived the "regular care of a ... physician" requirement for three weeks of the alleged disability period by offering to "reconsider paying benefits for the period between June 11 and July 1, 1980" if "Dr. Berwick can specify this [sic] period for which he felt you were disabled based on your May 28 visit and explain his reasoning." Defendant's Memorandum, Attachment C (Letter of Doug Rivard). However, the court cannot find that the defendant waived this requirement merely by offering to consider alternative proof of the alleged disability or that the defendant acted "arbitrarily or in bad faith" by enforcing the requirement when the plaintiff failed to provide any such proof.

the ground that he failed to provide "acceptable proof that [he was] disabled after June 11, 1980." Defendant's Memorandum, Attachment F (Letter of Ronald J. Cherry). *See also id.* at Attachment C (Letter of Doug Rivard). The defendant defines "disability" as being "completely unable to perform each and every duty of your occupation because of accidental bodily injury or disease." Lisner Affidavit, Attachment A (plan description). An applicant bears the burden of establishing his entitlement to benefits by "furnish[ing] proof of [his] disability satisfactory to the company upon request." *Id.* These requirements are a rational means of protecting plan assets and therefore cannot be said to be arbitrary or indicative of bad faith on the part of the defendant.

■ The only evidence presented to the defendant concerning the plaintiff's allegedly disabling condition, aside from the plaintiff's own deposition testimony, consisted of Dr. Berwick's letter of May 30, 1980, and his deposition of February 25, 1983. The defendant could rationally have concluded from this evidence that the plaintiff was not disabled between June 11, 1980, and September 1, 1980.

The deposition of Dr. Berwick reveals only that the plaintiff was "depressed" on May 28, 1980, and that the doctor prescribed an antidepressant medication and advised the plaintiff to take some time off work. *See* Berwick Deposition at 7–8. The letter of May 30, 1980, similarly stated that the plaintiff was suffering from "acute reactive depression" and had been ordered "to discontinue work temporarily until things are under control." Brassord Affi-

davit II, Attachment D. The letter also stated that Dr. Berwick "plan[ned] to see [the plaintiff] periodically in the office." *Id.* Dr. Berwick, who specialized in internal medicine and family practice, *see* Berwick Deposition at 4, did not at that time refer the plaintiff to a psychiatrist, psychologist or other mental-health professional. *Id.* at 14. In sum, there is no indication in the statements of Dr. Berwick that the plaintiff would have been "completely unable to perform each and every duty of [his] occupation" at any time between June 11, 1980, and September 1, 1980.

Even the deposition testimony of the plaintiff does not unequivocally indicate that he was "disabled," as that term is defined by the defendant, during the period in question. For example, the plaintiff was well enough to sail on his boat "two or three days a week, sometimes more" in June 1980. Brassord Deposition at 533. He was well enough to contact at least one person, and possibly more, in July 1980 to inquire about job openings in the insurance industry. *Id.* at 15–16. He was well enough to meet with the partners of Central Adjustment Services on July 23, 1980, to purchase his interest in that firm. *Id.* at 584, 587–588.

Finally, as noted above, the plaintiff repeatedly ignored the defendant's requests for the additional information that might have substantiated his disability claim. Indeed, the plaintiff refused until January 1984 even to sign the release form that would have permitted Dr. Berwick to disclose the plaintiff's condition to the defendant.[4] There is no evidence that the defen-

---

**4.** The plaintiff argues that the defendant is somehow "estopped" from denying him benefits because he was led to believe that he would be barred after July 20, 1980, from submitting evidence of his alleged disability. The plaintiff has cited no authority for the application of an estoppel theory in such circumstances. The Court of Appeals in *Haeberle v. Board of Trustees of Buffalo Carpenters,* 624 F.2d 1132, 1139 (2d Cir.1980), the only case relied upon by the plaintiff, indicated that estoppel could prevent a party who made a representation of fact from later denying that representation "if such denial would result in injury or damage to the relying party." Here, even if the court were to prevent the defendant from denying that no evidence of disability could have been submitted after July 20, 1980, the plaintiff would have no stronger claim for benefits. It would not have been irrational for the defendant to have denied the plaintiff's undocumented claim on the merits at any time after July 20, 1980, based on the plaintiff's representations to the defendant's personnel officer on or about July 10, 1980, that he would provide no further evidence of his alleged disability. *See* Brassord Deposition at 148.

dant demanded greater proof of disability from the plaintiff than from other applicants for disability benefits.

Accordingly, the court cannot find that the defendant acted arbitrarily or in bad faith by denying the plaintiff disability benefits on the ground that he had not demonstrated that he was "completely unable to perform each and every duty of [his] occupation" on June 11, 1980, or at any time thereafter. The plaintiff's conclusory allegations that the defendant's denial of benefits was part of a larger scheme to force him from his job on account of his age are insufficient to defeat a motion for summary judgment on this count. *See Quinn v. Syracuse Model Neighborhood Corporation, supra,* 613 F.2d at 445.[5]

### Conclusion

For the reasons stated above, the defendant's motion for summary judgment on count two of the complaint is hereby granted.

It is so ordered.

---

**5.** The court intimates no view at this stage of the proceedings as to whether the plaintiff was indeed the victim of illegal age discrimination. However, even assuming for the argument that the defendant was motivated by discriminatory animus, the plaintiff still could not recover disability benefits unless he satisfied all eligibility requirements that were not imposed arbitrarily or in bad faith. *Cf. Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 286, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977) (noting that "this Court has found it necessary to formulate a test of causation which distinguishes between a result caused by a constitutional violation and one not so caused").