In the Matter of HARRY GREENSEID et al., Individually and as Trustees of Local No. 11 Welfare Trust Fund, Petitioners, *v.* RICHARD E. STEWART, as Superintendent of Insurance of the State of New York, Respondent.

In the Matter of AUSTIN B. Cox, Individually and as a Former Trustee of Local No. 11 Welfare Trust Fund, Petitioner, *v.* RICHARD E. STEWART, as Superintendent of Insurance of the State of New York, Respondent.

First Department, April 2, 1969.

*Robert Roy Dann* of counsel (*Alfred J. Bohlinger* and *Victor M. Rosenzweig* with him on the brief; *Aranow, Brodsky, Bohlinger, Einhorn & Dann,* attorneys), for Harry Greenseid and others, petitioners.

*Murray Gartner* of counsel (*Louis B. Livingston* with him on the brief; *Poletti Freidin Prashker Feldman & Gartner,* attorneys), for Austin B. Cox, petitioner.

*Philip Weinberg* of counsel (*Samuel A. Hirshowitz* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for respondent.

*Per Curiam.* This proceeding under article 78 of the CPLR, transferred here from Special Term by consent, brings up for review a determination of respondent Superintendent of Insurance by which, in a proceeding instituted under article III-A of the Insurance Law, certain penalties were visited by him upon the trustees of Local No. 11 welfare trust fund (respondents in that inquiry, petitioners here).

The subject welfare fund's operations in respect of optical services rendered by it to union members during the period 1960 through 1965 were considered in an inquiry initiated by a citation directed to the trustees, by which they were called upon to show cause why they should not be removed from office, assessed with a fine, and " charged with depletion of fund

assets.'' The major derelictions of duty specified were that improvident contracts had been made with a certain doctor to render optical services to union members, that the rendering of such services was improperly supervised, that improper and insufficient records of such services were kept, and that the welfare fund was substantially depleted by overcharges for such services far in excess of what they should have cost. A lengthy hearing was held before a departmental hearing officer, which resulted in findings of fact, a decision, and conclusions, all of which were approved and adopted by the respondent Superintendent. The hearing officer found the petitioning trustees guilty of the specifications of neglect and nonfeasance in having permitted improvident contracts to be entered into for optical services provided by the welfare fund, in having failed to terminate such contracts, in having neglected adequate record keeping, and in consequently having suffered depletion of the welfare fund. Trustee Solomon, who was the welfare fund's administrator, was ordered removed from both posts and fined the statutory maximum of $2,500 (Insurance Law, § 37-*l*, subd. 6). The petitioning trustees (and others) were adjudged jointly and severally responsible for depletion of the welfare fund in the total sum of $138,130.90, with some of them held accountable for a smaller part thereof, proportioned to their respective periods of service as trustees. It was established by ample evidence that the trustees did not fulfill their duties of supervision, of maintenance of adequate records, and of conservation of the assets of the welfare fund. The paucity of records and the failure of the trustees and their employees to make adequate explanation of their conduct led inevitably to the findings and conclusions stated by the hearing officer (see *White* v. *Rankin,* 18 App. Div. 293, affd. 162 N. Y. 622).

As far as the trustees did not prevent by their conduct in withholding or failing to give information or to keep records, substantial compliance with the statute (Insurance Law, § 37-c, 37-d, 37-e, 37-h, 37-l, 37-n) is found in the record. Standards of due process are found to have been adhered to (*Matter of Stewart* [*Citizens Cas. Co.*], 23 N Y 2d 407, Dec. 12, 1968), with one exception, related to those portions of the hearing officer's report hereinafter directed to be vacated. The amount of depletion assessed against the trustees represents what the hearing officer found to have been the difference between what the optical services rendered actually cost the welfare fund under the improvident contracts and what they should have cost. The policy of secretiveness pursued by the establishment controlling the welfare fund necessitated employment of expedients

to determine the factor of what the cost should have been. It was presumed by the hearing officer that every card of the meagre records actually produced represented a pair of eyeglasses supplied, and this figure was established as the number of units as to which cost calculation should be made.

The figure deemed to be the proper price for an individual pair of eyeglasses was arrived at by introducing into evidence 55 reports made by respondent's examiners of what were said to be similar welfare funds supplying similar services, and by averaging out the price paid per pair of spectacles by each such fund. There is no doubt that such reports are "presumptive evidence of the facts stated therein" (Insurance Law, § 37-e, subd. 2), and this was the basis for their having been received in evidence. So much for their competence. But counsel for the trustees was prevented from conducting any meaningful examination into their *relevance* as a standard of comparison measurable against prices paid by the subject welfare fund. The hearing officer was content with the bald assurance of the departmental examiner that, out of the many reports in the departmental files, these 55 were the only ones comparable in coverage to the Local 11 welfare fund. No inquiry was permitted to be made into the service contracts of the other funds to ascertain their comparability with this welfare fund's contracts as to type of service rendered; no inquiry was permitted as to welfare funds other than the 55 (approximately 100 such) to ascertain whether they were comparable and should have entered into the calculation. To repeat, the sole basis for a finding of relevance was the examiner's assurance that these 55 reports, and no others, were relevant, and that, based on an average of the 55, the proper price for a pair of eyeglasses was $6.19. Thus, a muzzle was placed on inquiry into relevance, which is far from basic due process. It is no answer to say that the documents as to which inquiry was frustrated were all subject to subpoena by the trustees for copies were in the possession of the very agency which would have issued the subpoenas: i.e., the Department of Insurance, which could easily have avoided circumlocution by quick production as requested. Nor, based on the hearing officer's attitude as reflected in the record, was there any real possibility of their having been considered even if produced under subpoena. The argument that confidentiality prevented their production is footless for other reports in evidence lost their confidentiality by an instant publication process controlled by respondent.

The separate appeal of trustee Cox endeavors to have established for a trustee of an employee welfare fund a standard

somewhat less than that set up in simple English by article 3-A of the Insurance Law: "The trustees of every employee welfare fund shall be responsible in a fiduciary capacity for all money, property, or other assets received, managed or disbursed by them, or under their authority, on behalf of such fund." (§ 37-l, subd. 1.). The argument is without merit.

Therefore, while the hearing officer's basic findings, conclusions and decision may stand, there is no acceptable proof as to the proper calculation of the amount of depletion, and those findings and conclusions relating thereto should be stricken, without prejudice to the right of the Attorney-General to establish the amount of the same by proper proof in any action he may bring against the trustees to recover depletion (Insurance Law, § 37-l, subd. 6). The portions which should so be stricken are findings of fact numbered 28 and 29, those portions of the decision which purport to fix the average cost of eyeglasses at $6.19 per pair and to state an amount of depletion for the years 1960 through 1965, that portion of the conclusions numbered II, and Schedules 1 and 2 appended thereto, and, as so modified, the determination made by respondent Superintendent on April 5, 1968, should be confirmed, on the law, with costs and disbursements.

CAPOZZOLI, J. P., McGIVERN, MARKEWICH, NUNEZ and STEUER, JJ., concur.

Determination of the respondent unanimously modified, on the law, with $50 costs and disbursements to the respondent, by striking from the hearing officer's basic findings, conclusions and decision those findings and conclusions relating to the proper calculation of the amount of depletion, without prejudice to the right of the Attorney-General to establish the amount of the same by proper proof in any action he may bring against the trustees to recover depletion. The portions which are stricken are findings of fact numbered 28 and 29; the portions of the decision which purport to fix the average cost of eyeglasses at $6.19 per pair and to state an amount of depletion for the years 1960 through 1965, and the portion of the conclusions numbered II, and Schedules 1 and 2 appended thereto, and, as so modified, the determination is confirmed.