Leo H. Heithaus et al., Petitioners, v Albert B. Lewis, as Superintendent of Insurance of the State of New York, Respondent.

Second Department, May 10, 1982

##### APPEARANCES OF COUNSEL

*Cohen, Weiss & Simon* (*Stanley M. Berman* and *Jani K. Rachelson* of counsel), for Leo H. Heithaus and others, petitioners and *Botein, Hayes, Sklar & Herzberg* (*Stanley M. Kolber* and *Daniel A. Ross* of counsel), for Herbert E. Whitehead and another, petitioners (one brief filed).

*Robert Abrams, Attorney-General* (*August L. Fietkau* of counsel), for respondent.

##### OPINION OF THE COURT

Mangano, J. P.

In this proceeding, we are asked to consider, *inter alia,*

whether respondent, the New York State Superintendent of Insurance, acted in excess of his jurisdiction in directing petitioners to afford pension credits to certain individuals, in a fashion contrary to the duly adopted provisions of the pension plan which they administer in their fiduciary capacities. We find that the actions of the respondent were in excess of his jurisdiction.

Petitioners, as current or former trustees of the Industry and Local 338 Pension Fund (the Fund), commenced this proceeding to review a determination of respondent which sustained the specifications of a citation charging them with willfully violating and willfully failing to comply with the requirements of article 3-A of the Insurance Law by refusing to grant pension credits to certain individuals. The Fund was created and has been maintained, pursuant to a trust agreement dated June 26, 1950 among Local Union No. 338, International Brotherhood of Teamsters (Local 338), various employers, who, as parties to collective bargaining agreements with Local 338, agreed to make contributions to the Fund (contributing employers), and trustees designated by Local 338 and the employers. Pursuant to the trust agreement, the trustees adopted a pension plan (Plan), which sets forth the nature and amount of retirement benefits provided by the Fund and the eligibility requirements for such benefits. The Fund is an employee welfare fund within the meaning of section 37-a of the Insurance Law. The Fund and Plan also constitute an employee pension benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 (US Code, tit 29, § 1002) (ERISA). However, since the acts or omissions charged in the instant matter occurred prior to January 1, 1975, State jurisdiction over the matter is not pre-empted by ERISA (US Code, tit 29, § 1144, subd [b]; *Azzaro v Harnett,* 414 F Supp 473, affd 553 F2d 93 [CA2d], cert den 434 US 824).

Specification "A" charged petitioners with acting in an arbitrary, capricious and discriminatory manner in refusing to extend pension credits to one William G. Clark for certain years of service prior to his employment with a contributing employer.

Briefly, Clark was employed for over 19 years as an "over-the-road" driver by Matthew's Brothers, Inc. (Matthews), a milk trucking firm. Matthews did not have a collective bargaining agreement with Local 338 and consequently was not a contributing employer to the Fund. In June, 1972 Matthews was acquired by Dellwood Distributors (Dellwood), a creamery and milk trucking firm, for which Matthews had previously hauled milk. Dellwood had a collective bargaining agreement with Local 338 and was a contributing employer to the Fund. At the time of the acquisition, Dellwood hired 12 Matthews' employees who had been employed as "bulk farm pick-up" drivers and mechanics. Clark, however, was given his notice by Matthews at the time of the acquisition, and was not hired by Dellwood until some 10 weeks thereafter.

As employees of Dellwood, Clark and the others were covered by the Plan. However, whereas the employees who were hired immediately were accorded pension credits for the full term of their employment with Matthews, Clark received credit for only a portion of his service with Matthews.

The Plan provides, *inter alia,* that employees of a contributing employer receive pension credit for periods of service (contributed service) with such employer subsequent to the date on which the employer became obligated to the Fund pursuant to a collective bargaining agreement (contribution date) (Plan, art I, §§ 7, 8, 10, 13; art V, § 3). In addition to credit for this contributed service, employees also receive credit for work in the industry in categories covered by the collective bargaining agreement, prior to the contributing employer's contribution date (noncontributed service) (Plan, art I, § 12; art V, § 2). Dellwood's contribution date was January 1, 1960. Thus, in addition to receiving credit for his period of employment by Dellwood, Clark also received credit for his years of employment with Matthews prior to January 1, 1960. However, the Plan also provides that for those employees whose work in categories covered by the collective bargaining agreement was with an employer which has since been acquired by the contributing employer, the contribution date becomes the date of acquisition (Plan, art I, § 10). Thus for the Matthews

employees who went to Dellwood as a unit upon the acquisition, the contribution date was the acquisition date, and accordingly they received pension credit for all of their service with Matthews prior to the acquisition.

In finding that petitioners abused their authority in failing to accord Clark the same benefits as the other Matthews employees, respondent, the New York State Superintendent of Insurance concentrated on the lack of significant difference between his position as an "over-the-road" driver and that of the other employees as "bulk farm pick-up" drivers. Nonetheless, it is clear on the record that Clark was in no way a part of the unit immediately acquired by Dellwood. Respondent sustained the specification, finding that petitioners' denial of certain pension credits to Clark did not represent a fair exercise of judgment and discretion.

Specification "B" charged petitioners with acting arbitrarily and capriciously in failing to take measures to preserve the pension credits of certain employees of the Keebler Biscuit Co. (Keebler). In April, 1970 Keebler closed one of its New York facilities, and transferred the employees (who were covered by the Plan) to a New Jersey facility. In October, 1970 as a result of a jurisdictional dispute, the International Brotherhood of Teamsters shifted jurisdiction over the transferred employees from Local 338 to Local 560. Following this jurisdictional shift, Keebler, which up to that time had continued to make contributions to the Fund on these employees' behalf, ceased making such contributions to the Fund, and began to contribute to Local 560's pension fund. Since Keebler was then no longer a contributing employer, these employees ceased to accrue pension credits under the Fund and those credits which had not yet vested were lost. Several courses of action were proposed to petitioners by respondent (on behalf of the affected employees) to preserve these credits, including (1) transferring credits and funds to Local 560's fund, (2) permitting Keebler to continue to contribute to the Local 338 fund (even though it was no longer a party to a collective bargaining agreement with Local 338), and (3) becoming signatories to the Teamsters' International Reciprocity Agreement (as was Local 560).

Each of these proposals, which in some cases would have required amendment of the Plan, was considered by petitioners and rejected, with the result that the employees in question lost their pension credits.

In sustaining this specification respondent stated that "It would have taken relatively simple action on the part of [petitioners] to preserve and protect the pension credits of the Mt. Vernon Keebler employees by accepting anyone of the aforesaid procedures. Instead, the [petitioners] adopted a hard and fast 'legalistic' approach to the detriment of the * * * employees".

Respondent's decision directed, *inter alia,* that petitioners "take the necessary and appropriate action to afford pension credit to [Clark] for that period of time he was employed by Matthews", and "to preserve the pension credits of the Mt. Vernon Keebler employees".

Respondent predicated his assertion of jurisdiction upon section 37 of the Insurance Law, which is a declaration of the policy underlying article 3-A of the Insurance Law, regarding employee welfare funds. That section states: "Declaration of policy. It is hereby declared to be the policy of the state that employee welfare funds are of great benefit to employees and their families and that their growth should be encouraged; that the establishment and management of such funds vitally affect the well-being of millions of people and are in the public interest; and that such funds should be supervised by the state to the extent necessary to protect the rights of employees and their families, without imposing burdens upon such funds which might discourage their orderly growth and without duplicating the supervisory responsibilities presently vested in any state agencies." It has also been stated that "The underlying reason for the enactment of article III-A * * * was the protection from irregularities of welfare funds by registration with, reports to and examination by the Superintendent [of Insurance]" (*McKay v Stewart,* 29 NY2d 563, 565).

To this end, article 3-A of the Insurance Law provides, *inter alia,* for the registration of funds (§ 37-b); maintenance of fund records and periodic examinations of fund

affairs (§ 37-c); and annual statements and reports to the Superintendent, employers and employees (§§ 37-g, 37-h, 37-i). Thus, respondent is vested with broad authority to see that trustees of employee welfare funds exercise their powers as fiduciaries in a responsible manner.

In this case, however, there has been no abuse by petitioners of their fiduciary responsibilities. Rather, petitioners have properly made determinations as to the eligibility of Clark and the Keebler employees for pension credits, in accordance with the duly adopted provisions of the Plan. What respondent has challenged is their failure to exercise their discretionary power to go beyond those provisions in order to accommodate the particular situations involved in this matter.

While the results may seem somewhat harsh, there is nothing in the record to indicate that the manner in which the Plan establishes eligibility for pension credits is either arbitrary or capricious. Absent such a showing, it is not for respondent to establish different eligibility requirements (see *Cawley v NMU Pension & Welfare Plan*, 457 F Supp 301). Indeed, with respect to Specification "B", concerning the Keebler employees, respondent even noted that petitioners had taken a "legalistic" approach in their decisions to refrain from engaging in the suggested procedure which may have preserved those employees' pension credits. Thus, it was recognized that petitioners' actions were well within the scope of their authority pursuant to the trust agreement. The fact that petitioners had the discretionary power to amend the Plan in order to accommodate the instant situations does not render their failure to act a breach of their fiduciary duty.

This is not a case where the trustees have improperly depleted fund assets (see *Matter of Coluccio v Schenck*, 56 AD2d 707) or failed to maintain adequate records in contravention of section 37-c of the Insurance Law (see *Matter of Greenseid v Stewart*, 31 AD2d 454, mod on other grounds 30 NY2d 730).

Petitioners carried out their duties in accordance with the requirements of the Plan for determining eligibility for

pension credits, and, absent a showing that those eligibility requirements were arbitrary or capricious respondent had no jurisdiction to compel them to alter those requirements.

THOMPSON, BROWN and NIEHOFF, JJ., concur.

Proceeding pursuant to CPLR article 78, *inter alia,* to review a determination of respondent dated December 17, 1980, which, after a hearing, *inter alia,* sustained the specifications of a citation charging petitioners with willfully failing to comply with the requirements of article 3-A of the Insurance Law, by denying pension credits to certain individuals.

Petition granted, on the law, with costs, determination annulled and citation dismissed.